312 So.2d 842

**BURGESS MINING AND CONSTRUCTION CORPORATION, a corporation,**

v.

**STATE of Alabama ex rel. William J. BAXLEY, Attorney General.**

Civ. 385.

Court of Civil Appeals of Alabama.

Jan. 8, 1975.

Rehearing Denied Feb. 5, 1975.

Zeanah, Donald, Lee & Williams, and Wilbor J. Hust, Jr., Tuscaloosa, for appellant.

William J. Baxley, Atty. Gen., L. G. Kendrick and Frederick S. Middleton, III, Asst. Attys. Gen., for the State of Alabama.

WRIGHT, Presiding Judge.

This is an appeal from a judgment assessing civil penalties for discharging pollution into a stream of the state.

Defendant, Burgess Mining and Construction Company was charged by the State of Alabama with discharging pollution into the Cahaba River in Bibb County, Alabama on several occasions in April and May of 1973 without first having obtained a permit from the Alabama Water Improvement Commission. The action was brought under the provisions of Chapter 3A of Title 22 of the Code of Alabama as amended by Act Number 1260, effective November 21, 1971. This case is the first to be brought under the statute.

Complaint was filed by the Attorney General on behalf of the State on May 24, 1973. After various pleadings, the issues were drawn by pre-trial order of September 25, 1973. Jury trial was begun on October 15, 1973. Judgment was entered on October 18, assessing civil penalties against defendant and in favor of the State in the sum of $3,000.00. Motion for judgment notwithstanding the verdict and for new trial was denied on April 1, 1974. Defendant appealed. We affirm the judgment of the trial court.

The pre-trial order contained admissions of jurisdiction, venue and that defendant pumped a liquid into the Cahaba River in

Bibb County at the time charged in the complaint. The State charged such liquid was polluted with coal fines and sediments which were dangerous to aquatic life or harmful and detrimental to the use of the river for swiming, boating or fishing. Defendant denied that the liquid discharged into the river contained any substance which was dangerous or harmful to wildlife or detrimental to the use of the river for boating, swimming or fishing.

The evidence of the State tended to show that on April 30, 1973, defendant was engaged in strip mining operations at a site some 100 yards from the Cahaba River in Bibb County. Such operation had begun in 1972 and by April of 1973 had evolved into a large pit some 40 to 50 feet in depth. Located in the pit were bulldozers and loaders which removed the soil and rock cover from the coal seam. The coal was then loaded into trucks and hauled away. From time to time, due to large rainfall and ground seepage, substantial amounts of water accumulated in the pit. At such times, it became necessary to use pumps to remove the water. A six-inch suction pipe was lowered into the water from the pump and another six-inch discharge pipe led from the pump out of the pit, and to the vicinity of a wet weather stream nearby. As the pump operated, water and sediment were sucked from the pit and discharged into the stream. The effluence then ran some 100 yards into the Cahaba River. Often, while the pump was operating, the water in the pit was being stirred and agitated by the loader removing coal and loading it into trucks which then climed from the pit and carried away the coal. Wire mesh covering the suction pipe was large enough to allow materials as large as one inch in diameter to be sucked up by the pump and discharged from the pit.

Witnesses observing the scene described the discharge as black, gray or brown liquid containing large amounts of solid materials. The volume varied from a stream of pencil size to one of six inches. The flow of the wet weather stream was substantially greater below the point of discharge as compared to that above. The banks of the stream were four to six feet above its bed and at times it was filled by the discharge. The vegetation along the banks and the banks themselves were discolored by the discharge and trees were marked by black or yellow rings. As the discharge reached the river it spread out and as much as a fourth to one-half of the river was discolored black and appeared oily for 100 to 150 yards downstream.

Witnesses who had regularly fished and boated upon the river stated the discoloration of the water by the discharge greatly increased the turpidity, was unsightly, coated their fishing equipment with a black oily substance and was detrimental to fishing.

Witness, Dr. Williams, a biologist from Tuskegee Institute, qualified as to the fish and aquatic life of the Cahaba River, testified as to his finding of coal fines in the river at the entrance of the wet weather stream. He stated that he found a large delta in the river formed from coal fines and other sediment entering the river from the wet weather stream into which the matter from defendant's pit was pumped. He was permitted to state his opinion that the coal fines in the river had been deposited six to eight months prior to his finding them on October 5, 1973. He further gave his opinion that coal fines and sediment deposited in the river would have an adverse or harmful effect on the plant and aquatic life of the river. Dr. Williams stated that he examined the Cahaba River from the mouth of the wet weather stream to a point 300 yards downstream. He found coal fines deposited upon the rocks and plants. He further found there was a total absence of mussels, snails and aquatic insects which are a vital link in the food chain of fish. Above the point of entry of the discharge from the coal pits such aquatic life was abundant.

Defendant contended below that the evidence of the State was insufficient to es-

tablish the charge specified in the complaint. It assigns the insufficiency of the evidence to sustain the verdict as error here.

Defendant contends that the evidence is insufficient because it did not show that the acts of defendant violated any standard established by the Alabama Water Improvement Commission.

Act 1260 was enacted by the Alabama Legislature in 1971. Sec. 140(12a)–(12g) of Title 22, Code of Alabama. It established the Water Improvement Commission and gave it general supervision over the administration and enforcement of all laws relating to pollution of the waters of the state. The Commission was given the duty to establish standards of quality for any waters in relation to their use and the public interest. Certain general criteria standards for limits of pollution of streams of the state were adopted by the Commission. It is defendant's argument that in order to sustain a verdict against it in this case, the State must have shown that the discharge into the river or its effect on the waters of the river exceeded the established standards of pollution. Defendant submits violation of such standards was not shown by the State as no tests were made of the discharge or of the river showing the amount of acidity, turpidity or suspended solids contained therein. We do not agree with defendant that such proof was necessary to support a verdict in this case.

Sec. 140(12b) defines pollution as follows:

" 'Pollution' means such contamination, or other alteration of the physical, chemical or biological properties, of any waters of the state, including, but not limited to, any violation of water quality standards, change in temperature, taste, color, turbidity, or odor of the waters, by the discharge of any sewage, industrial wastes, or other wastes, or of any liquid gaseous, solid, or other substance into any waters of the state as will or is likely to create a nuisance or render such waters harmful, detrimental or injurious to public health, safety or welfare, or to domestic, commercial, industrial, agricultural, recreational, or other legitimate beneficial uses, or to livestock, wild animals, birds, fish or other aquatic life."

Sec. 140(12d)(j)(6) provides:

"Every person who, subsequent to the effective date of this chapter, wishes to begin discharging any new or increased pollution into any waters of this state shall apply to the commission in writing for a permit and must obtain such permit before discharging such pollution."

Sec. 140(12d)(o) provides:

"Any person who . . . discharges sewage, industrial wastes, or other wastes into the waters of Alabama without a permit as required by this chapter shall be liable to a penalty of not less than $100.00 nor more than $10,000.00 for said violation which may be recovered in a civil action in the circuit court. . . ."

■ Defendant was shown to have discharged matter into the Cahaba without a permit from the Commission. Such material was shown to be pollution as defined by the Act. Evidence was presented that such pollution was harmful to aquatic life and detrimental to recreational use of the river. The complaint against defendant was not a violation of water quality standards but was the pollution of the river without a permit. It appears to this court that evidence as to compliance with established criteria of water standards in this case was a matter of defense to the charge of pollution. Such standards are merely permissible or desirable limits of pollution set by the Commission and deemed not to be harmful to fish and other aquatic life. If permitted by the Commission, pollution within such standards would not appear to be a violation. This appears to be the logical construction of the alternative requirements provided by Sec. 140(12d)(o).

We conclude that the evidence in this case supports the verdict of the jury.

Appellant says in assignment of error 6 that the court was without jurisdiction in the matter for there had been no hearing before the Commission.

Though indirectly presented by defendant's sixth defense, the matter charged in assignment 6 was not included as an issue in the pre-trial order. However, we will consider it here.

Sec. 140(12d)(m) provides that one aggrieved by an order of the Commission may, within 15 days after notice, apply for a hearing. Defendant submits that it received an order from the Commission when its field agent told its superintendent to cease pumping on May 15 and apply for a permit. We do not consider the act of the field agent to constitute the order referred to in Sec. 140(12d)(m). Our conclusion is made clear by the provisions of Sec. 140(12d)(*l*). That section places the authority for issuing an order charging a violation upon the commission, and describes the order and what it must contain. Such order is one of cease and desist, stating the matters which are in violation and specifying a time for ceasing.

Sec. 140(12d)(*o*) provides,

" . . . The issuance of an order shall not be a condition precedent to the commencement of any action under this section; however, where an order has been issued, the alleged violator shall be afforded an opportunity to be heard upon said order as provided herein before any action is commenced hereunder."

We conclude as did the trial court, that an oral directive from a field agent to stop pumping and apply for a permit was not an order by the Commission as intended by the statute.

Assignment of error 26 is directed to the permitting of amendment by the State, at the trial, of its answers to request for admissions made eleven days prior thereto. Events which transpired were these—in its request for admissions, defendant had sought and received an admission that the state had taken no samples of the matter discharged into the river nor of the river itself. During the testimony of witness Dr. Williams it was shown that he had taken samples of the sediment in the river and at other locations. Over objection of defendant the witness was permitted to give his opinion as to the composition of the samples and how long it had taken to accumulate. The samples were shown to have been taken by the witness the first day of trial on his own initiative. The samples were placed in evidence. Defendant made no objection at the time that such evidence was contrary to pre-trial admissions.

As court opened the following day, the defendant orally moved that the samples and the testimony of the witness about them be excluded or that a mistrial be declared.

After much discussion and study by court and counsel of the new Rules of Civil Procedure and in particular, Rule 36(b), the State was permitted to amend its admissions to include the matter presented. Defendant was offered time and opportunity to examine the samples, take others and do whatever it reasonably deemed necessary to rebut or counteract the effect of the evidence objected to. Such offer was not accepted by defendant. The court denied the motion to exclude and refused a mistrial. We think properly so.

The avowed purpose of the rules of civil procedure is "to achieve justice, under law, in the most simple, direct, speedy, and inexpensive manner possible." (Preface to Proposed Alabama Rules of Civil Procedure by Oakley Melton, Jr., Chrm., Page IX, Alabama Rules of Court, 1973, West Publishing Co.) Without a lengthy discussion of Rule 36, Alabama Rules of Civil Procedure, we consider that defendant suffered no injury from the fail-

ure of the State to seek and secure the right to amend its admissions of fact before offering the testimony of Dr. Williams and the samples related thereto. The State gave a pre-trial identification of Dr. Williams as an expert witness and the essence of his testimony. Defendant was not surprised by the appearance of Dr. Williams or his testimony as to the presence of coal fines in the Cahaba River and their effect on aquatic life. The appearance of samples of mud taken by Dr. Williams the day before may have been unexpected by defendant, but it responded with extended cross examination and direct testimony contrary to Dr. Williams' opinions by its own expert. Claim of prejudice to defendant did not come until the next day after direct, cross and expert rebuttal was offered. Rule 36(b) provides for withdrawal and amendment of admissions with permission of the Court. The responsibility is upon the one who has obtained admissions to show that amendment will prejudice him. Rule 36(b). The Alabama Rules of Civil Procedures are to be construed to do substantial justice. Rule 61. We conclude the trial court was correct in its denial of exclusion of evidence and of a mistrial in this instance.

Appellant assigns as error the refusal by the court of proffered testimony of test results of samples of water taken from the pit area and the river on June 6, 1973.

The record shows that such evidence was refused admission because it was shown that conditions of the pit were substantially changed by appellant after May 15, 1973 and prior to taking of the samples in question.

We conclude that the trial court did not err in its ruling. The action was based upon alleged discharge of pollution into the Cahaba River by defendant from its mining pit from April 15 to May 20, 1973. The evidence was that during this time the pit was in full operation and the discharge

came from the pit while production was in progress. Defendant's employee stated that after notice from the agent of the Commission, discharge and production was stopped immediately subsequent to May 15. Ground and rainwater were allowed to collect at one end of the pit, while the old working area was intentionally filled with 5 to 12 feet of soil. The coal seam was covered to a substantial depth. On June 6, 1973, when the samples of water were collected for testing, the pit had not been in operation for some time. The area from which the alleged pollution had come was under several feet of fill dirt. The water tested had accumulated in a large settling pool located in a different area of the pit. There had been no stirring or agitation of the pool for several weeks. Clearly conditions of the pit and its operation had substantially changed since the date of charged pollution.

There must be similarity of conditions and circumstances at the time of a test as compared to the time of the event charged for the results of such test to have sufficient probative value for admission into evidence. It is for the court to determine whether conditions are sufficiently similar to warrant admission of such evidence. Much is left to the discretion of the trial court. Louisville & Nashville R. Co. v. Sullivan, 244 Ala. 485, 13 So.2d 877, Norton Co. v. Harrelson, 278 Ala. 85, 176 So.2d 18. We find it clear that conditions were far different at the time of taking samples of water for test than they were during the period of alleged pollution. The court did not abuse its discretion in refusing admission of the results of the tests.

We find no error prejudicial to appellant in the record. We therefore affirm the judgment of the trial court.

Affirmed.

BRADLEY and HOLMES, JJ., concur.