This is an appeal from a judgment based on a jury verdict against Green Tree Acceptance, Inc. (hereinafter "Green Tree"), a general financing company, for fraud arising out of the sale of a mobile home. Green Tree sued Martha C. Doan to recover the mobile home it had sold to her, and Doan filed a counterclaim alleging fraud in the procurement of the sales contract. The jury awarded Green Tree possession of the mobile home and awarded the counter-plaintiff Doan $2,298.00 in compensatory damages and $58,500.00 in punitive damages on the fraud counterclaim. The trial court denied Green Tree's motion for a judgment notwithstanding the verdict on the counterclaim, and this appeal followed. We affirm.
Jack Crawford, d/b/a Mobile Home World in Opelika, Alabama, had a previously repossessed mobile home for sale. Martha Doan heard about the mobile home and went to Mobile Home World to talk to Crawford about the possibility of buying it. Crawford told Doan that if her credit application was approved by the finance company she could assume the mortgage on the mobile home with monthly payments of approximately $176.00 by paying the back lot rent at the mobile home park and making the past due payments on the mortgage. The amount needed to assume the mortgage totaled $1,131.72.
Doan informed Crawford that she did not have enough cash to make the total down payment. Crawford agreed to pay the difference between what Doan was able to pay — two past due payments and the back lot rent — and the total amount needed to assume the mortgage. Doan agreed and filed a credit application.
After her credit application was approved, Doan went to Crawford's office at Mobile Home World and paid the cashier. She received a receipt for her portion of the down payment in the amount of $353.74. Crawford and Doan then went to the mobile home. Crawford checked the pipes, replaced the steps, gave Doan the key, and told her that she could go ahead and move in because the contract would go through in just a few days. Doan never heard from Crawford again after that point.
Meanwhile, Green Tree had received and approved Doan's credit application on the condition that the past due payments would be made. Green Tree sent the retail sales contract to Mobile Home World for the necessary signatures via courier mail, but the package was returned undelivered. Green Tree then sent Larry Dillard, a collection manager, to Mobile Home World to inspect the mobile home.
When Dillard arrived at the dealership he found the doors locked, the lot empty, and no one on the premises. He then went to Priester's Mobile Home Park, where he found Doan living in the mobile home. At that point, Dillard and Doan discussed the contract and the down payment. Dillard asked Doan for the down payment on the mobile home, but Doan explained that she had already paid Crawford $353.74, and that he had told her that he would pay the difference. Both Doan and Dillard stated in their depositions that Doan specifically told Dillard that she did not have the rest of the down payment and could not obtain any more money. As a result of the conversation, Doan claimed that Dillard stated that Green Tree would get the money from Crawford and that he owed them the money. Furthermore, Doan claimed that Dillard told her she did not have to worry about the fact that the contract stated that she was to make that down payment.
With the knowledge that Doan could not make any more of the down payment than she had already made, and with the knowledge that Mobile Home World and Jack Crawford apparently had disappeared, Dillard nonetheless had Doan sign the contract for the sale of the mobile home.
Doan had been renting a house with her three teenaged daughters. After signing the contract, she gave up the lease on her rental home and also sold some of her furniture and her refrigerator at a loss *Page 204 
because furniture and a refrigerator were included with the mobile home.
Later, Dillard told his office manager, Sam Bradley, about the problem of locating Crawford to collect the down payment. Green Tree continued to try to locate Crawford, but discovered that Crawford had gone out of business and had filed for bankruptcy. At that point, Dillard went back to Doan and demanded the remainder of the down payment. Once again, Doan told Dillard that she could not get enough cash to pay the remainder of the down payment, so Dillard and Doan worked out a payment plan in which the remainder of the down payment was tacked onto the end of the contract term. However, Dillard later learned that the assumable mortgage on the mobile home was through the FHA, whose regulations required that the down payment be made prior to assumption; therefore, Green Tree could not allow the down payment to be tacked onto the contract. Finally, Dillard informed Doan that unless she made the down payment, she would have to move out of the mobile home.
On several occasions, by letter and in person, Green Tree attempted to collect the down payment from Doan. Doan insisted that her agreement was with Crawford and that he was responsible for the down payment. On one occasion, a Green Tree representative went to Doan's mobile home on Thanksgiving Day and threatened to take the mobile home away unless Doan voluntarily moved out. When the threats were unsuccessful, Green Tree filed a complaint, claiming its right to possession of the 1982 DeRose mobile home. Doan filed a counterclaim alleging fraud.
On June 2, 1986, Green Tree filed a request for admissions from Doan. Doan did not respond to the request until July 11, 1986, 39 days after the request was made. Green Tree moved to strike the response, but the court denied the motion. Green Tree also moved for a summary judgment on the counterclaim, which was denied.
Following the close of the evidence at the trial, the judge gave the following jury charges on the fraud counterclaim, at the plaintiff's request:
 No. 9: To recover on her counterclaim for fraud, Ms. Doan must prove that Green Tree did all of the following four elements:
1. made a false representation
2. of a material existing fact
3. that Ms. Doan relied upon
4. to her detriment.
 No. 12: Ms. Doan must prove Green Tree's fraudulent intent clearly by the evidence.
 No. 29: If after a consideration of all the evidence, you are not clearly and satisfactorily convinced that Green Tree made a false representation to Ms. Doan, then you must return a verdict for Green Tree on Ms. Doan's counterclaim.
The jury awarded Green Tree possession of the mobile home and awarded Doan $2,298.00 in compensatory and $58,500.00 in punitive damages on her fraud counterclaim. Green Tree appealed the judgment against it on the counterclaim.
The following issues are raised on appeal:
1. Whether the trial court erred in denying Green Tree's motion to strike Doan's responses to Green Tree's request for admissions on the grounds that the responses were untimely and prejudicial.
2. Whether the trial court erred in refusing to give Green Tree's requested jury charges numbered 10, 27, and 28.
3. Whether the trial court erred in awarding compensatory and punitive damages on Doan's fraud counterclaim.
4. Whether the jury's verdict fails for inconsistency because the jury awarded possession of the mobile home to Green Tree and awarded damages to Doan for fraud.
 I.
Green Tree asserts that the trial court erred in permitting Doan to file an untimely response to Green Tree's request for admissions. We disagree. *Page 205 
Rule 36(a), Ala. R. Civ. P., allows 30 days for a party to respond to a request for admissions, and Rule 6(e) allows an additional 3 days for responses to a request that is delivered through the mail. If a party fails to file a timely response, the statements are deemed admitted. However, Rule 36(b) gives the trial court discretion, on a motion and "[s]ubject to the provisions of Rule 16 governing amendment of a pre-trial order," to permit the "withdrawal or amendment [of admissions] when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him in maintaining his action or defense on the merits." See Evans v. Insurance Co. of North America,349 So.2d 1099 (Ala. 1977).
Doan's response to the request for admissions was not timely, coming 39 days after the request. To have the response stricken, Green Tree had the burden of proving prejudice. SeeBurgess Mining Constr. Corp. v. State ex rel. Baxley,55 Ala. App. 61, 312 So.2d 842 (Ala.Civ.App.), cert. denied,294 Ala. 16, 310 So.2d 872 (1975). Green Tree filed a motion to strike the response to admissions, claiming that it was prejudiced because the response arrived only three days prior to the trial date and that Green Tree had relied on the belief that the statements were deemed to be admitted when it prepared to try the case. However, Green Tree failed to indicate any specific prejudice to it in maintaining its action on the merits as a result of the late responses. Furthermore, Green Tree admittedly knew before trial that the trial court had the discretion and might permit the responses; therefore, Green Tree should have been prepared in case the responses to the request for admissions were allowed.
Green Tree cites authority for the proposition that a court should not allow withdrawal of admissions at trial except upon giving the opposing party the opportunity for a continuance.Marshall v. District of Columbia, 391 A.2d 1374 (D.C. 1978). InMarshall, the first notice the opposing party had regarding the withdrawal of admissions came during the trial. In the instant case, Green Tree had notice of the response to the request for admissions prior to trial. The only question to be decided immediately prior to trial was whether the trial court would allow the response. The fact that Green Tree had notice prior to trial and knew that the trial judge had discretion to permit the response, distinguishes this case from Marshall, supra.
We conclude that the trial court did not abuse its discretion in permitting Doan to respond to the request for admissions.
 II.
Green Tree also claims that the trial court committed reversible error when it failed to give its requested jury charges numbered 10, 27, and 28, which read:
 Requested Charge No. 10: Because the alleged misrepresentation by Green Tree relates to a future event, Ms. Doan must prove that at the time the statement was made, Green Tree (through Larry Dillard) had actual fraudulent intent not to perform the act. Mere failure to perform is not enough. Armstrong v. Life Insurance Co. of Virginia, 454 So.2d 1377 (Ala. 1984). [Emphasis in original.]
. . . .
 Requested Charge No. 27: If after a consideration of all of the evidence, you are not clearly satisfactorily convinced that Green Tree promised Ms. Doan that it would look to Jack Crawford for the down payment and that Green Tree intended, at the time it made that promise, not to look to Crawford, then you must return a verdict for Green Tree on Ms. Doan's counterclaim. Armstrong, [supra]. [Emphasis in original.]
 Requested Charge No. 28: If you find that Green Tree promised Ms. Doan that she would not have to pay the down payment and that Green Tree intended, at the time it made that promise, to look to Jack Crawford for the down payment, then you must render a verdict for Green Tree on Ms. Doan's counterclaim. Armstrong, [supra]. *Page 206 
Green Tree asserts that Doan's claim is one ofpromissory fraud, which requires a different burden of proof than a claim simply for fraud. While fraud is the false representation of a material existing fact inducing reliance and causing damages, Ala. Code 1975, § 6-5-101 et seq., promissory fraud requires proof that at the time the promisewas made, there was an intent not to perform the promised act. § 6-5-102. See Purcell Co. v. Spriggs Enterprises, Inc.,431 So.2d 515, 519 (Ala. 1983). Green Tree claims that because it allegedly promised to attempt to get Crawford to make the down payment, the promise alleged was a promise to do something in the future, making Doan's only cause of action one for promissory fraud. Therefore, Green Tree says, in order for it to be liable, Dillard must have knowingly made a false representation regarding his intent to attempt to get the down payment from Crawford.
On the premise that Doan was making a claim for promissory fraud, Green Tree argues that it was entitled to an instruction on the burden of proof for promissory fraud, specifically, an instruction regarding the present intent requirement. Because the trial court failed to give Green Tree's requested jury instructions on promissory fraud, Green Tree asserts that the trial court committed reversible error. We disagree.
First, Green Tree's argument on appeal is premised on a mistaken assumption. A careful review of both the counter complaint and the trial record reveals that Doan never asserted a claim for promissory fraud. The complaint alleged:
 4. During said negotiations, Green Tree, by and through its representatives or agents, fraudulently induced Mrs. Doan to part with her money; fraudulently induced Mrs. Doan to assume and agree to pay the remaining monthly installments to become due on the Phibbs' installment contract, beginning with the June 1, 1984, monthly payment; fraudulently induced Mrs. Doan to make said monthly payments beginning with the June 1, 1984, payment; fraudulently induced Mrs. Doan to sign an installment purchase contract for the purchase of said mobile home calling for 168 monthly payments in the amount of $176.87 each, beginning with the monthly payment to become due on June 1, 1984; all by fraudulently representing to Doan that said mobile home was hers upon her paying said three back payments and upon her assuming and paying the monthly payments to become due on the Phibbs' contract, beginning with the June 1, 1984, monthly payment thereon; by fraudulently assuring Mrs. Doan that she did not have to pay any portion of any down payment; by fraudulently assuring Mrs. Doan that she need not worry about the fact that the installment contract that Green Tree was then requesting that she sign recited a down payment of $1,131.72; by fraudulently assuring Mrs. Doan that the local mobile home dealer (Crawford) owed that money to Green Tree, that Green Tree was looking to Crawford and was collecting that sum from Crawford; by fraudulently representing to Mrs. Doan and assuring Mrs. Doan that all she had to do in order to become the purchaser and owner of said mobile home (after having paid three back monthly payments to Crawford) was her assuming the remaining monthly payments to become due pursuant to the Phibbs' contract beginning with the June 1984 monthly payment, and Doan's signing the installment contract then being presented to her by Green Tree; and by fraudulently concealing from Mrs. Doan the true status of the Phibbs' installment contract.
Furthermore, Doan's testimony was not that Dillard promised to do some act in the future, but that he told her that Crawford was responsible for the down payment and that she did not need to worry about it:
 [Doan]: Well[,] we talked about the contract and we went over the contract and, you know, he told me how much they were asking for it, you know, the twelve thousand. . . . And then he told me about the finance charges and then we went on to discuss the fact of how many payments that had to be made and at how much a month and we got on down *Page 207 
there, he said all that other was filing fee. And so we went on down there and we was going over it. And I asked him about that down payment. And he told me that that was money that Jack Crawford owed them. That the company was going to get it from Crawford, for me not to worry about that, not to be concerned at all. And I asked him, I said, "Are you sure about that." I said, "Because I don't have that kind of money. I don't have that kind of money to put down on no trailer." And so he told me then that I didn't have to worry about it, that it was the money that Crawford owed Green Tree Acceptance, that they were going to get their money from him.
 [Counsel]: All right. Was it at that point that you signed the contract?
[Doan]: It was after I had asked him, yes, sir.
 [Counsel]: All right. Mrs. Doan, would you have signed this contract if Mr. Larry Dillard had not told you that the down payment would come from Jack Crawford?
[Doan]: No, sir, I wouldn't have.
. . . .
 [Counsel]: Did he tell you you needed to buy some insurance to cover that trailer in the event it burned up?
 [Doan]: Yes, sir, in case of fire or damages to cover the trailer.
[Counsel]: Did you go and buy that insurance?
 [Doan]: Yes, sir, and he told me all I needed was my pink sheet to show the insurance company. That's all I needed to show them.
 [Counsel]: So you had all you needed to go on and take over this home?
[Doan]: Yes, sir.
 [Counsel]: Did he make any representation to you about whether it was yours at that point?
 [Doan]: Yes, sir, he said, you know, he told me, he said, "This is yours now" after I signed the contract. He said, "Here" and, you know, just told me to make sure I made my first payment June 1st and for me to get the insurance on it.
. . . .
 [Counsel]: — when Mr. Dillard came to your home there? All right. Did Mr. Dillard ever tell you, Mrs. Doan, that well we're going to try to get it out of Jack Crawford, try to get the down payment out of Jack Crawford as opposed to you?
[Doan]: No, sir.
. . . .
 [Counsel]: Tell the jury whether or not Mr. Larry Dillard ever said to you that Green Tree would try and get the down payment from the dealer. Did he ever tell you that?
[Doan]: No, sir, he didn't.
. . . .
 [Doan]: He never told me anything like that. He told me not to worry about it, that the company was going to get their money from Crawford.
[Counsel]: From Jack Crawford?
[Doan]: From Jack Crawford.
 [Counsel]: All right. Did he ever say to you now if we can't find Mr. Crawford we're going to come back to you and want this $1,100 out of you?
[Doan]: No, sir, he did not tell me that.
 [Counsel]: Did he ever say to you, you know, come on sign right now and then if we can't find Crawford then we'll worry about that or cross that bridge when we come to it?
 [Doan]: No, sir, I wouldn't have signed the contract because I knew I didn't have that kind of money to pay down on it. He didn't tell me anything like that. He just told me the company would get their money from Crawford.
Larry Dillard's testimony, which is substantially the same, follows:
 [Dillard]: She wanted to sign the contract or agreed to sign the contract. And at that time I gave her the buyer's copy of the contract. However, it hadn't been endorsed by Green Tree at that time.
. . . .
 I don't think she read it word for word. She looked over it. But I don't think — there's no way she could have read it.
. . . . *Page 208 
 I told — asked her about the down payment which she said she had given to Jack Crawford. And I told her that I'd have to see about getting the remainder of the down payment from the dealer and that I would get back with her.
. . . .
 [She said] [t]hat that was all that she had agreed to pay.
. . . .
 She said that she paid all that she was supposed to pay down. And that was her agreement with Mr. Crawford. And he was the one that she was buying the home from.
. . . .
 I think [she said that] it was more [than she could pay] and that she did not — could not come up with that kind of money.
. . . .
 I asked her if she could borrow the down payment and she said no[,] she didn't have credit.
[Then she signed the contract.]
Dillard's testimony continued:
 [Counsel]: But it was on that occasion that you told Mrs. Doan that you would have to — that she would have to see about getting the rest of the money from Crawford?
[Dillard]: Yes.
 [Counsel]: And if Crawford wanted to pay it that was all right with Green Tree?
 [Dillard]: Right. Well that's what we were expecting. Believe me, that's why we sent the loan package to him.
 [Counsel]: So Green Tree expected that payment to come from Crawford?
[Dillard]: Yes.
 [Counsel]: And you told Mrs. Crawford — Mrs. Doan that?
[Dillard]: Yes.
 [Counsel]: And she signed the contract with that understanding?
 [Dillard]: I believe she probably — she probably did.
Although the distinction may appear subtle, Doan's claim is not that she relied on a promise by Dillard to attempt to get the down payment from Crawford, but that she relied on Dillard's statement that Crawford was the party responsible for the down payment and that after signing the contract she had nothing to do except purchase insurance. In other words, if Dillard had not told her that Crawford owed Green Tree the down payment, then Doan would not have signed the contract at all. Thus, Doan did not depend on a promise by Dillard that he would attempt to get the money from Crawford, but depended on his assurance that she was not going to be responsible for the down payment. That, Doan argues, was a misrepresentation of an existing fact, not a promise to do something in the future.
The potential fraud arises from the fact that Dillard knew that Doan had no way of obtaining the remainder of the down payment and he knew that Green Tree had been unable to locate Crawford and his business. With that knowledge, Dillard did not inform Doan that he would come back to her for the down payment if Crawford did not pay or that she would lose the home if she failed to make the payment. Rather, Dillard induced Doan to sign the contract by telling her that Crawford was responsible, that she did not have anything to worry about, and that she could get insurance on the home after she signed the contract. On these facts, the jury could have found that Dillard, as Green Tree's agent, knowingly and intentionally induced Doan to sign the contract based on a false representation of a material existing fact regarding her responsibility to make the down payment.
The important points in this analysis are Doan's factual claims and arguments at trial, not what could have been argued. Although Doan could have asserted a claim for promissory fraud on the grounds that Green Tree suggested on appeal, that is not the claim that was made or argued. As a result, Green Tree was not entitled to a jury charge on that issue, but, likewise, Doan would not have been entitled to a jury verdict on a claim that was never made. *Page 209 
Moreover, even assuming for the moment that the jury should have been instructed on the issue of promissory fraud, the trial court correctly refused the plaintiff's requested jury charges numbered 10, 27, and 28, because Green Tree included in its charges only the requirement that Green Tree must not have intended to look to Crawford for the down payment at the timeit made the promise. The charges implied that if the jury did not find a present intent to deceive with regard to Dillard's alleged statements then the jury had to render a verdict infavor of Green Tree. This is an inaccurate statement, because, as has already been illustrated, there are facts to support a claim of fraud other than promissory fraud; thus, the jury could have found no promissory fraud and still the verdict may not have been in favor of Green Tree.
For the foregoing reasons, the trial court did not err in refusing these jury charges.
 III.
Green Tree's third contention on appeal is that there was insufficient evidence to support the jury's verdict on the fraud claim. Specifically, Green Tree asserts that there was no evidence of a present intent to deceive, no evidence of reasonable reliance by Doan, and no evidence of damages. SeePurcell, supra; Kennedy Electric Co. v. Moore-Handley, Inc.,437 So.2d 76 (Ala. 1983). We disagree.
First, for the reasons indicated in Section II, we conclude that there was sufficient evidence for the jury to find that Green Tree had a present intent to deceive Doan. In particular, knowing that Doan could not make the down payment and that Crawford had apparently disappeared, Dillard still induced Doan to sign the sales contract by telling her that Green Tree would go to Crawford for the down payment and by telling her not to worry about the "cash down payment" listed in the contract.
On the issue of reliance, we also conclude that there was sufficient evidence to support the jury verdict. Green Tree asserts that Doan had already paid some portion of the down payment and moved into the mobile home, and, therefore, that Green Tree's alleged statement that it would turn to Crawford for the down payment did not cause Doan to do anything she had not already done. Furthermore, Green Tree makes much of the fact that Doan had as much information regarding the disappearance of Crawford and Mobile Home World as Dillard and Green Tree had; because Doan had the information, Green Tree says that she could not reasonably have expected Green Tree to locate Crawford.
However, there is also evidence to support a jury finding that Doan signed the contract in reliance on Dillard's assurances that Green Tree would look to Crawford for the down payment. It is a conceivable conclusion that Doan believed, and that Dillard intended for her to believe, that it was Crawford's responsibility to pay the remainder of the down payment and that if Crawford failed to pay, it would not affect her contract.
Additional evidence of reliance includes the fact that, after she signed the contract with Green Tree, Doan gave up the lease on the house she had been renting with her three daughters, and the fact that Doan sold her one-year-old refrigerator and some furniture at a loss because a refrigerator and furniture were supplied with the mobile home.
Green Tree's final assertions are that the fraud claim should have failed because Doan did not suffer any damages and, furthermore, that the evidence provided no justification for punitive damages. Finally, Green Tree claims that the punitive damages that were assessed were so excessive that they violated the Eighth Amendment of the United States Constitution.
As evidence of the assertion that Doan did not suffer any compensatory damages, Green Tree argued that if Doan had not signed the contract, she still would have had to move out of the mobile home. Although it is true that Doan would have had to move out of the mobile home if she had not signed the contract, that was not the only damage she suffered as a result of *Page 210 
her reliance on the misrepresentations. Not only did Doan sign a contract and legally "obligate" herself to pay for the mobile home, but she also gave up the lease on the house she had been renting and sold some of her household furnishings in reliance on the sales contract. Those are damages that were not sustained until after Doan had signed the contract. Therefore, we conclude that there was enough evidence to support the jury's award of compensatory damages.
The jury awarded punitive damages in the amount of $58,500.00. Punitive damages are intended both as a punishment for intentional wrongdoing by a party and as a deterrent to prevent similar conduct by others. Cox v. Birmingham Ry., Light Power Co., 163 Ala. 170, 50 So. 975 (1909), and are recoverable in a fraud claim when the fraud "is gross, malicious, oppressive and [the misrepresentation is] made with knowledge of its falseness, or so recklessly made as to amount to the same thing." Morgan v. South Central Bell Telephone Co.,466 So.2d 107, 113-14 (Ala. 1985). The amount of the punitive damages award is within the discretion of the jury; however, the damages should bear some relation to the enormity of the wrong. Cox, supra.
We conclude that there was sufficient evidence of fraud and fraudulent intent to justify the jury award of punitive damages in the amount of $58,500.00. Furthermore, the damages are not excessive in light of the Eighth Amendment, notwithstanding the claim made by Green Tree.
 IV.
Green Tree's final argument for reversal is that the jury's verdicts on the claim and the counterclaim are inconsistent. The jury granted Green Tree possession of the mobile home, but still awarded both compensatory and punitive damages to Doan. Green Tree claimed that these awards indicated that the jury instructions were inadequate and that the jury based its verdicts on sympathy. We disagree.
The question of whether the claim and the counterclaim were interrelated and required separate verdicts was discussed by the court and counsel for both parties prior to the closing arguments. The trial judge made it clear to the parties that he believed that the claim and counterclaim were factually related, but that each required an independent verdict and that it was possible for the jury to find in favor of Green Tree on the detinue claim and in favor of Doan on her fraud counterclaim. The trial judge stated:
 I'm going to tell them, I think, that Green Tree Acceptance Corporation can win on the mobile home and be entitled to it. But nevertheless if [the jury] find[s] fraud, Mrs. Doan can win on the issue of damages for that.
Doan's counsel agreed with the trial court's analysis on separate verdicts; however, Green Tree's counsel had the following disagreement with the judge:
 [Green Tree's Counsel]: Your Honor, I agree that both parties can lose on their claims but I disagree that both parties can win. I don't believe that is possible.
The Court: Why not?
 [Green Tree's Counsel]: Because if we are entitled to get the mobile home back, that means that we made no promise to Mrs. Doan that she wouldn't have to pay the down payment.
 The Court: [No], I mean, [Green Tree] could have promised her, I think, that she didn't have to make the down payment but the law might be that she [was] required to make the down payment under the FHA regulations, or whatever. And [Green Tree] would be entitled to the mobile home, perhaps, under that. But [Green Tree] could have still also defrauded her. . . .
At the request of the trial court, counsel for both parties drafted jury verdict forms. The forms separated the verdicts into a verdict on the claim and a verdict on the counterclaim. When the trial judge gave the verdict forms to the jury, he gave this instruction:
 [T]here are two separate claims for you people to decide here. One, possession of the mobile home and two, fraud or *Page 211 
not. And if fraud, what the damages are.
. . . .
 The jury verdicts that I will talk to you about . . . are separate. The verdict in one case does not depend on the other.
After the jury instructions were given, the trial court asked counsel if they had any objections; Green Tree's counsel stated that they renewed whatever prior objections they had made, but said nothing further. Consistent with what the jury instructions permitted, the jury returned a verdict in favor of Green Tree on its claim and a verdict in favor of Doan on her counterclaim.
Recently, this Court decided a case in which there were inconsistent verdicts. Custom Truck Sales Service v. Osborn,507 So.2d 424 (Ala. 1987). In Osborn, the jury was instructed to return a verdict in favor of the plaintiff on the claim or in favor of the defendant on the counterclaim. The jury rendered a verdict for the plaintiff on the claim and a verdict for the defendant on the counterclaim. This Court, noting that there could be no clearer case of inconsistent verdicts, reversed and remanded.
In the instant case, the jury was instructed that it could return a verdict in favor of Green Tree on its claimand a verdict in favor of Doan on the counterclaim. Unlike the jury in Osborn, the jury here did precisely what it was instructed it could do; therefore, the only question is whether the judge correctly determined that the verdicts were independent.
Although it does appear at first glance that a verdict in favor of Green Tree on the repossession claim is inconsistent with a verdict in favor of Doan on the fraud claim, a closer evaluation reveals that the two claims are independent. We do not agree with Green Tree's counsel that a jury finding that Green Tree was entitled to possession of the mobile home necessarily means that Green Tree could not have told Doan that she was not responsible for the down payment. Pursuant to the FHA regulations, Doan could not assume the mortgage unless all the past due payments on the repossessed mobile home had been paid. Therefore, if the jury concluded, based on the facts, that all the past due payments had not been and would not be paid, then Green Tree would be entitled to possession of the mobile home. Nonetheless, the FHA requirements do not bear any relation to the question of whether Green Tree's actions and statements in trying to procure the sales contract constituted fraud. If, in order to obtain Doan's signature on the contract, Dillard intentionally misrepresented to Doan that Crawford, not Doan, owed Green Tree the down payment, or if Dillard persuaded Doan to sign the contract by telling her not to worry about the "cash down payment," knowing that Doan could not pay the remainder, then the jury could still find fraud in the inducement of the contract. Doan's damages were a result of the fraud, and for those she is entitled to recover.
Although the jury verdict does not specify precisely why the jury concluded that Green Tree was entitled to possession of the mobile home, there was sufficient evidence for the jury to so conclude. There was also sufficient evidence for the jury to conclude that Green Tree committed fraud, and that Doan suffered damages in reliance on Green Tree's fraud.
Finding sufficient evidence to uphold the jury's verdict on each claim and finding no inconsistency, we affirm the judgment based on those verdicts.
AFFIRMED.
TORBERT, C.J., and JONES, SHORES, ADAMS and STEAGALL, JJ., concur. *Page 212