ON APPLICATION FOB REHEARING

COOK, Justice.
The opinion of August 12, 1994, is withdrawn, and the following is substituted therefor.
The plaintiff, Environmental WasteCon-trol, Inc. (“EWC”), appeals from a summary judgment for the defendant Browning-Ferris Industries, Inc. (“BFI”), on EWC’s claims of fraud, promissory fraud, breach of contract, breach of a joint venture agreement, and intentional interference with business relations.[1] The dispute in this case arises out of negotiations between EWC and BFI toward opening and maintaining a sanitary landfill in Blount County. The negotiations were extensive; however, the parties never entered a written agreement, and the letters exchanged between the parties indicate that the parties differed on several important aspects of the proposed venture.
EWC contends that while it was negotiating with BFI regarding the proposed landfill, BFI was, at the same time, working on its own with officials in Walker County with the hopes of operating a landfill there. EWC contends that it would be difficult for two landfills so close to be profitable. The record indicates that the parties began negotiations in 1988 and continued them through June 1990. During those negotiations, BFI made an offer to purchase from EWC a particular tract of land in Blount County that the parties were considering for the landfill; EWC held an option on that land. EWC refused BFI’s offer to purchase at a certain price. EWC contends that at a time when the details were close to being ironed out, BFI “dropped EWC.” EWC does agree, however, that the financial aspects of the details were never completely resolved.
“A summary judgment is proper when there exists no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56, *887 A.R.Civ.P.; King v. Breen, 560 So.2d 186 (Ala.1990). In determining whether a summary judgment was properly entered, this Court will view the evidence in a light most favorable to the nonmovant and will resolve against the moving party all reasonable doubts concerning the existence of a genuine issue of material fact. Fincher v. Robinson Bros. Lincoln-Mercury, Inc., 583 So.2d 256 (Ala.1991). In determining whether there was a genuine issue of material fact, this Court is limited to a consideration of the factors that were before the trial court when it ruled on the summary judgment motion. Broadmoor Realty, Inc. v. First Nationwide Bank, 568 So.2d 779 (Ala.1990). However, this Court’s reasoning is not limited to that applied by the trial court. Hill v. Talladega College, 502 So.2d 735 (Ala.1987).
“Once the moving party makes a prima facie showing that no genuine issue of material fact exists, then the nonmoving party has the burden of presenting evidence demonstrating the existence of a genuine issue of material fact. Grider v. Grider, 555 So.2d 104 (Ala.1989). Because this action was filed after June 11, 1987, the nonmovant must meet this burden by ‘substantial evidence.’ Alabama Code 1975, § 12-21-12; Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989). Under the substantial evidence test, the nonmovant must present ‘evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989); § 12-21-12(d).”
Mims, Lyemance, & Reich v. UAB Research, 620 So.2d 594, 599 (Ala.1993).
The record indicates that the parties conducted extensive negotiations. While they were negotiating, the state placed a moratorium on landfills in the state of Alabama; this moratorium complicated their dealings with one another. In June 1990, BFI formally notified EWC that BFI was no longer interested in a joint venture agreement with EWC. In August 1990, the Blount County Commission voted unanimously to negotiate a regional landfill agreement with BFI. The only other serious contender for the contract with Blount County was EWC, which by that time had a tentative agreement with Sanifill. BFI also signed a waste disposal contract with Walker County in October 1990, after “several months of negotiating”; this fact, EWC argues, is evidence that BFI did not intend to consummate an agreement with EWC.
The trial court properly entered the summary judgment for BFI with regard to the claim alleging breach of contract. The agreement, if there was a final agreement, was to include dealings with one another extending for approximately 20 years; it was never reduced to writing. Thus, the agreement would have been unenforceable because of the Statute of Frauds, § 8-9-1, Ala.Code 1975. Furthermore, the record indicates that although the parties offered proposals and counterproposals indicating that they may have been seriously interested in reaching an agreement, they, in fact, never reached one.
Likewise, the trial court properly entered the summary judgment with regard to the claim alleging breach of a joint venture agreement. It is true that ordinarily the existence of a joint venture agreement is a question for the jury. This Court wrote in Arndt v. City of Birmingham, 547 So.2d 397 (Ala.1989):
“‘A joint venture is an association of persons with intent, by way of express or implied contract, to engage in and carry out a single business venture for joint profit, for which purpose they combine their efforts, property, money, skill, and knowledge, without creating a partnership or a corporation, pursuant to an agreement that there shall be a community of interest among them as to the purpose of the undertaking, and that each participant shall stand in the relation of principal as well as agent as to each of the other coadventurers, with an equal right of control of the means employed to carry out the common purpose of the venture.’ *888 46 Am.Jur.2d Joint Ventures § 1 (1969). As we stated in Moore v. Merchants & Planters Bank, 434 So.2d 751, 753 (Ala.1983), ‘while every element is not necessarily present in every case, it is generally agreed that in order to constitute a joint venture, there must be a community of interest and a right to joint control.’ (Emphasis added [in Arndt ].)
“What constitutes a joint venture is a question of law, but whether a joint venture exists has been held to be a question of fact for the jury. 46 Am.Jur.2d Joint Ventures § 7 (1969). Unless the trial court can say that the parties were or were not engaged in a joint venture as a matter of law, the question must be presented to the jury. As between the parties themselves, the relationship of joint venturers is a matter of intent. As to third persons, it is generally the rule that the legal rather than the actual intent of the parties controls. 46 Am.Jur.2d Joint Ventures § 9 (1969). ‘The burden of establishing the existence of a joint venture is upon the party asserting that the relation exists.’ Moore v. Merchants & Planters Bank, 434 So.2d 751, 753 (Ala.1983); Kim v. Chamberlain, 504 So.2d 1213 (Ala.Civ.App. 1987).”
547 So.2d at 399-100; see Moore v. Merchants & Planters Bank, 434 So.2d 751, 753 (Ala.1983).
The negotiations between EWC and BFI went back and forth, and the correspondence between them clearly shows that they never entered a joint venture. For example, EWC wrote a letter to BFI in January 1989 that stated in pertinent part:
“In that conversation, we understood that B.F.I. was prepared to offer $2,200,-000, plus expenses, for the + 415 acres in Blount County with 80-120 acres of that land permittable for waste landfill.
“This letter is written to express how we would like to accept this offer. We realize the mechanics and details would need to be worked out with our respective attorneys and accountants from both B.F.I. and Environmental Waste Control, Inc. We, therefore, at this writing, simply take the layman’s approach hoping it will eventually produce a legal written document agreeable to both parties.
‘We would rather see a figure of $2,000,-000 as a net figure proposed at the conclusion with B.F.I. exercising all land costs acquisitions and after all expenses are paid, regardless, the resulting $2,000,000 would be what the 5 owners would pay long-term capital gains [taxes] on. The 5 owners want ... $400,000 [each] before taxes (long-term).
[[Image here]]
“There are several areas of understanding that aren’t clear and need defining better. One is how it will be permitted relative to and under whose design? We have contended all along if B.F.I. were to be the only buyer, which you are, at the present, being considered, then this criteria must be given by you at your expense to our engineer so he can propose what you want ...
[[Image here]]
“We have capitulated to every desire proposed by your company, including money. As you know, our primary targeted goal was not this particular site. We do not know whether it is necessary or applicable in this agreement, but we would like to have the understanding in principle that we will be your agent for acquiring additional permits, if needed, at county line or other facilities about the State.
“Since we sought 3.2 million as a bargained economic solution and wound up acquiescing to + 2.4 million, this $800,000 gap puts quite a capital drain in our primary targeted landfill area.
[[Image here]]
“Okay, Mark, you got County Line at your number. Now we are saying join us and let’s get our numbers on the next adventure. We still believe our primary targeted location will make County Line just a good stepping stone, a beneficial learning curve for us, and an economic gain for you. We treat this as an equitable solution, and in balance, parity for both parties.
*889 “Since we have acquiesced to your numbers, we feel comfortable this letter will be answered quickly.
“If we come to a meeting of the minds by 1/23/89, then we can let our respective accountants and attorneys work out the solutions to the agreed upon general format and specifics.”
The response from BFI to the EWC letter of January 1989 was as follows:
“We at B.F.I. South Central Region are in general agreement with the purchase price quoted in your letter dated January 14, 1989.
“Corporate approval has been applied for, and upon receiving, we will send a formal letter of approval.”
Corporate approval was not forthcoming, and in May 1989 the moratorium on permits for solid waste management facilities (landfills) went into effect.
In January 1990, EWC sent the following letter to BFI in response to a BFI proposal:
“We would like to state in our terms what we think an agreement should be. We differ with your proposal as stated on January 5, 1990. We are, however, continuing to negotiate in good faith, as promised at that January 5th meeting, until January 19, 1990.
“We would like to resolve the money issue first. Once this is accomplished, then we can let our respective attorneys settle the various legal issues in parity and equity.”
On January 17, 1990, the parties negotiated with regard to a proposed letter of understanding, but that letter was never executed. Clearly, there was no agreement as to a joint venture.
EWC next contends that BFI committed promissory fraud when it fraudulently lulled it into working toward an agreement with BFI while BFI secretly was beginning to compete against EWC. EWC argues that BFI negotiated with EWC and that each time EWC acquiesced to BFI’s demands in an effort to reach an agreement, BFI changed its requirements and made new requests of EWC. EWC also contends that BFI’s insistence that EWC “refrain from meaningful discussions with other waste disposal companies” (Appellant’s brief at page 24) constituted evidence from which a jury could conclude that BFI negotiated with EWC long enough to make itself independently competitive. EWC contends that BFI suddenly withdrew from negotiations with EWC in mid-June 1990 and, that, before the end of June, BFI was independently negotiating for the Blount County landfill.
In further support of its fraud count, EWC points out that BFI had been negotiating with Walker County for a waste disposal facility there. EWC argues that Walker and Blount Counties could not support two disposal facilities so close to each other and that BFI’s negotiations with Walker County exemplify an intent to prevent EWC’s involvement in a waste disposal project in Blount County. The affidavit of one Walker County official indicates that BFI had been negotiating with Walker County for “several months” before the execution of an agreement in October 1990. BFI terminated its relationship with EWC in June 1990.
Fraud consists of false representation of a material fact that another party relies upon to his or her detriment. Harmon v. Motors Ins. Corp., 493 So.2d 1370,1373 (Ala.1986). This Court has written the following about a claim of “promissory fraud”:
“[Such a claim] requires a different burden of proof than a claim simply for fraud. While fraud is the false representation of a material existing fact inducing reliance and causing [damage], Ala.Code 1975, § 6-5-101 et seq., promissory fraud requires proof that at the time the promise was made, there was an intent not to perform the promised act. § 6-5-102. See Purcell Co. v. Spriggs Enterprises, Inc., 431 So.2d 515, 519 (Ala.1983).”
Green Tree Acceptance, Inc. v. Doan, 529 So.2d 201, 206 (Ala.1988). In order to withstand BFI’s properly supported motion for summary judgment on EWC’s claim alleging promissory fraud, EWC had to provide substantial evidence of a material false representation coupled with an intent not to perform at the time the false representation was made. EWC argues that the evidence of the *890 Walker County contract, entered soon after the negotiations with EWC were terminated, and EWC’s evidence that the BFI would change the terms of the proposal each time EWC capitulated to BFI’s demands and BFI’s insistence that EWC refrain from meaningful discussions with other waste disposal companies constitute substantial evidence from which a jury could determine that BFI misrepresented its intent when it negotiated with EWC and, in so doing, allowed time to develop its own competing plan for a waste disposal landfill in the area that did not include EWC. Because we find that EWC presented substantial evidence supporting its claim of promissory fraud, we reverse the judgment as to that count and remand the cause.
ORIGINAL OPINION WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED IN PART; REVERSED IN PART; AND REMANDED; APPLICATION OVERRULED.
HORNSBY, C.J., and ALMON, SHORES, INGRAM and BUTTS, JJ., concur.

. Although we do not address the claims alleging fraud and intentional interference with business relations, the summary judgment as to those claims was appropriate.