On Application for Rehearing
The opinion of May 16, 1997, is withdrawn and the following opinion is substituted therefor.
This is the second appeal in this case. See EnvironmentalWasteControl, Inc. v. Browning-Ferris Industries, Inc.,657 So.2d 885 (Ala. 1995) ("Environmental I").[1]
In Environmental I, the trial court entered a summary judgment for the defendants — Browning-Ferris Industries, Inc. ("BFI, Inc."), and Browning-Ferris Industries of Alabama, Inc. ("BFIA") — on claims by Environmental Waste Control, Inc. ("EWC"), alleging fraud, promissory fraud, breach of contract, breach of a joint venture agreement, and intentional interference with business relations. This Court affirmed the summary judgment as to all claims except promissory fraud. Holding that EWC had presented substantial evidence in support of its promissory fraud claim, we reversed the judgment and remanded the cause.
On remand, the defendants filed two motions for summary judgment. The first motion was filed by BFI, Inc.; it alleged that the trial court lacked in personam jurisdiction over BFI, Inc., because, it argued, BFI, Inc., lacked "the requisite minimum contacts with the State of Alabama." The second motion for summary judgment was filed by both defendants; it claimed that there was no genuine issue of material fact regarding EWC's promissory fraud claim.
EWC moved to strike the motion for summary judgment on the promissory fraud claim, arguing that a summary judgment would be improper, in light of this Court's holding inEnvironmental I that EWC had presented substantial evidence of promissory fraud. The trial court denied EWC's motion to strike and heard oral arguments regarding the pending motions. In a single order, the trial court granted both pending motions for summary judgment and entered a judgment in favor of the defendants.
EWC appealed. However, in its brief to this Court, EWC stated:
 "Plaintiff EWC also makes application to this Court for a writ of mandamus seeking to have the trial court follow the mandate of this Court issued [in Environmental I] and/or to have the case reassigned to a trial judge who will follow the mandates of this Court."
When an appeal will not provide a remedy adequate to prevent "undue injury," a writ of mandamus may be issued, for example, to require a trial court to comply with the mandate of this Court. Ex parte Insurance Co. of North America, 523 So.2d 1064
(Ala. 1988). See, also, Ex parte Spears, 621 So.2d 1255
(Ala. 1993). Because there is no evidence that the appeal of this case will not provide an adequate remedy, the drastic remedy of mandamus is not required.
"Where the mandate of this Court to a court below is precise, it is the duty of the lower court to carry it into execution.Lyon v. Foscue, 60 Ala. 468 (1877)." Wright v. Cypress ShoresDevelopment Co., 461 So.2d 1296, 1299 (Ala. 1984). Our "mandate" in Environmental I was a partial reversal of the judgment and a remand of the cause. EWC claims that it was the duty of the trial court to comply strictly with the mandate inEnvironmental I and, therefore, that no judgment was permitted except the one directed in that opinion. In Environmental I, however, we gave no specific or "precise" instructions as to how the cause was to proceed on remand, nor did we direct a particular judgment. On remand, the parties conducted additional discovery. Although we conclude that a genuine issue of material fact continues to exist on the promissory fraud issue, our decision in *Page 914 Environmental I did not prohibit the trial court from considering this additional evidence.
EWC first contends that the trial court erred in granting BFI, Inc.'s motion for summary judgment on the ground that the court lacked personal jurisdiction over BFI, Inc., because of a lack of "sufficient minimum contacts"[2] with Alabama, EWC contends that the record contains substantial evidence of BFI, Inc., contacts with Alabama sufficient to subject BFI, Inc., to suit in this state.
In its motion for summary judgment, supported by a "narrative summary of undisputed facts," depositions, an affidavit, and a memorandum of law, BFI, Inc., claimed that it had had no contacts with the State of Alabama.
In his affidavit, Steven L. Thomas, BFI, Inc.'s vice president for operations/administration, testified that BFI, Inc., was a Delaware corporation with its principal place of business in Houston, Texas, and that it was a "holding company." Mr. Thomas stated that BFI, Inc., had no employees or agents in Alabama; had no office in Alabama; did not do business in Alabama; did not supply goods or services in Alabama; did not solicit business in Alabama; and did not own, have an interest in, or possess real property in Alabama. Mr. Thomas concluded by stating that "[n]o officer, agent, or employee of BFI, Inc., has had any contact or communications with EWC or any of its officers or agents."
An Alabama court may obtain in personam jurisdiction over a foreign defendant if the plaintiff is able to demonstrate that the defendant had sufficient contacts with Alabama — such contacts that "the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' "McGee v. International Life Insurance Co., 355 U.S. 220, 222,78 S.Ct. 199, 200, 2 L.Ed.2d 223 (1957) (quoting InternationalShoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158,90 L.Ed. 95 (1945)); Steel Processors v. Sue's Pumps, Inc.Rentals, 622 So.2d 910 (Ala. 1993).
 "[A] separate legal existence will not be recognized when a corporation is 'so organized and controlled and its business conducted in such a manner as to make it merely an instrumentality of another.' Forest Hill Corp. v. Latter Blum, 249 Ala. 23, 28, 29 So.2d 298, 302 (1947), or when it is the 'alter ego' of the person[3] owning and controlling it. Whether the separate legal entity of a corporation may be 'pierced' and personal liability imposed is 'a question of fact treated as an evidentiary matter to be determined on a case by case basis.' Messick v. Moring, 514 So.2d 892, 893 (Ala. 1987); accord Deupree v. Ruffino, 505 So.2d 1218 (Ala. 1987)."
Ex parte AmSouth Bank of Alabama, 669 So.2d 154, 156 (Ala. 1995) (emphasis supplied).
 "This Court has said that a parent corporation which owns all the stock of a subsidiary corporation is not liable for acts of its subsidiary corporation, unless the parent corporation so controls the operation of the subsidiary corporation as to make it a mere adjunct, instrumentality, or alter ego of the parent corporation. Baker v. Hospital Corporation of America, 432 So.2d 1281 (Ala. 1983). . . . In considering the indicia of control, courts have quoted at length §§ 5 and 6 of Powell on Parent and Subsidiary Corporations:
 " 'So far as the question of control alone is concerned, the parent corporation will be responsible for the obligations of its subsidiary when its control has been exercised to such a degree that the subsidiary has become its mere instrumentality.
 " 'The Instrumentality Rule is recognized in all jurisdictions in this country and our problem therefore is to determine *Page 915 
the circumstances which render the subsidiary an "instrumentality" within the meaning of the decisions. This is primarily a question of fact and of degree.
 " 'The circumstances [render] the subsidiary an instrumentality. It is manifestly impossible to catalogue the infinite variations of fact that can arise but there are certain common circumstances which are important and which, if present in the proper combination, are controlling. These are as follows:
 " '(a) The parent corporation owns all or most of the capital stock of the subsidiary.
 " '(b) The parent and subsidiary corporations have common directors or officers.
 " '(c) The parent corporation finances the subsidiary.
 " '(d) The parent corporation subscribes to all the capital stock of the subsidiary or otherwise causes its incorporation.
 " '(e) The subsidiary has grossly inadequate capital.
 " '(f) The parent corporation pays the salaries and other expenses or losses of the subsidiary.
 " '(g) The subsidiary has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation.
 " '(h) In the papers of the parent corporation or in the statements of its officers, the subsidiary is described as a department or division of the parent corporation, or its business or financial responsibility is referred to as the parent corporation's own.
 " '(i) The parent corporation uses the property of the subsidiary as its own.
 " '(j) The directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take their orders from the parent corporation. . . .
 " '(k) The formal legal requirements of the subsidiary are not observed.'
 "Taylor v. Standard Gas Electric Co., 96 F.2d 693, 704-05 (10th Cir. 1938); see, also, Baker v. Raymond Int'l, Inc., 656 F.2d 173 (5th Cir. 1981); Garrett v. Southern Ry., 173 F. Supp. 915
(E.D.Tenn. 1959)."
Duff v. Southern Ry., 496 So.2d 760, 762-63 (Ala. 1986) (emphasis supplied).
EWC maintains that the record contains sufficient evidence to, at the very least, create a genuine issue of material fact as to whether BFI, Inc., had sufficient contacts with this State to subject it in personam jurisdiction in Alabama. We agree.
In its complaint, EWC alleged that BFIA is a "wholly owned subsidiary of defendant Browning-Ferris Industries, Inc.," and the defendants' answer to the complaint admitted this allegation. The initial negotiations between EWC and BFI, Inc., were conducted by Joe Tortorigi, president of EWC, and Ross Patton, BFI, Inc.'s divisional vice president for market development and corporate research. And, although an employee of BFIA (Mark Brantley) contacted EWC to set up an initial meeting for the proposed Blount County landfill project, the meeting was conducted at a BFI, Inc., divisional office in Memphis, Tennessee, with BFI, Inc., representatives Hugh Dillingham and Steve Anderson.
A second negotiating meeting in Birmingham in the late summer of 1988 was attended by BFI, Inc., representatives Dean Brown and Steve Anderson. A November 7, 1988, letter to EWC from Dean Brown was under the letterhead of "BFI Waste Systems — Browning Ferris Industries — South Central Region." This letter constituted a proposal to EWC for a landfill in Blount County. The letter reads, in pertinent part, as follows:
 "Browning-Ferris Industries (BFI) has investigated the potential of the proposed Blount County landfill. . . . BFI would like to enter an agreement with [EWC]. Thus, we propose four plans for your consideration.
 "Plan A (Purchase) — BFI will purchase the property and permit from EWC. . . . .
"Plan B (Lease) — BFI will pay EWC. . . . *Page 916 
"Plan C (Lease) — BFI will pay EWC. . . .
 "Plan D — BFI will contract with EWC for landfill disposal. . . .
 "In Plans A, B, and C, BFI will pay all reasonable permitting costs."
(Emphasis added.)
In January 1989, EWC received the following letter from Mark Brantley (on letterhead of "BFI Waste Systems — Browning Ferris Industries," with a Birmingham, Alabama, address):
 "We at BFI South Central Region are in general agreement with the purchase price quoted in your letter dated January 14, 1989.
 "Corporate approval has been applied for, and upon receiving, we will send a formal letter of approval."
Finally, EWC points to BFI, Inc.'s 1994 Form 10k report filed with the SEC, wherein BFI, Inc., stated that it operates its solid waste business through regional offices.
There is evidence throughout the record to indicate that BFI, Inc., maintained sufficient contacts with Alabama to subject it to the jurisdiction of our courts without violating "traditional notions of fair play and substantial justice." Indeed, it is not unreasonable to assume that it was "foreseeable" that BFI, Inc., could be held liable for the conduct of its subsidiary BFIA. Steel Processors v. Sue'sPumps, Inc., supra; and Millette v. O'Neal Steel, Inc.,613 So.2d 1225 (Ala. 1992). The trial court erred in granting BFI, Inc.'s motion for summary judgment on this issue. See Sudduthv. Howard, 646 So.2d 664 (Ala. 1994).
In addition to arguing that the trial court ignored the mandate of this Court regarding the issue of promissory fraud, EWC also argues that it presented substantial evidence of promissory fraud, so as to preclude a summary judgment, and that, in Environmental I, this Court agreed. Therefore, we must determine whether, on remand, BFIA presented sufficient substantial evidence to overcome the holding in Environmental I
that there existed a genuine issue of material fact with regard to the allegation of promissory fraud.
We quote from Environmental I the basis for our holding that the first summary judgment was improper with regard to EWC's claim of promissory fraud:
 "EWC contends that BFI suddenly withdrew from negotiations with EWC in mid-June 1990 and that, before the end of June, BFI was independently negotiating for the Blount County landfill.
 "In further support of its fraud count, EWC points out that BFI had been negotiating with Walker County for a waste disposal facility there. . . .
 "Fraud consists of [a] false representation of a material fact that another party relies upon to his or her detriment. Harmon v. Motors Ins. Corp., 493 So.2d 1370, 1373 (Ala. 1986). This Court has written the following about a claim of 'promissory fraud':
 " '[Such a claim] requires a different burden of proof than a claim simply for fraud. While fraud is the false representation of a material existing fact inducing reliance and causing [damage], Ala. Code 1975, § 6-5-101 et seq., promissory fraud requires proof that at the time the promise was made, there was an intent not to perform the promised act. § 6-5-102. See Purcell Co. v. Spriggs Enterprises, Inc., 431 So.2d 515, 519 (Ala. 1983).'
 "Green Tree Acceptance, Inc. v. Doan, 529 So.2d 201, 206 (Ala. 1988). [(Emphasis in Doan.)] In order to withstand BFI's properly supported motion for summary judgment on EWC's claim alleging promissory fraud, EWC had to provide substantial evidence of a material false representation coupled with an intent not to perform at the time the false representation was made. EWC argues that the evidence of the Walker County contract, entered soon after the negotiations with EWC were terminated, and EWC's evidence that . . . BFI would change the terms of the proposal each time EWC capitulated to BFI's demands and BFI's insistence that EWC refrain from meaningful discussions with other waste disposal companies constitute substantial evidence from which a jury *Page 917 
could determine that BFI misrepresented its intent when it negotiated with EWC and, in so doing, allowed time to develop its own competing plan for a waste disposal landfill in the area that did not include EWC. Because we find that EWC presented substantial evidence supporting its claim of promissory fraud, we reverse the judgment as to that count and remand the cause."
Environmental I, supra, 657 So.2d at 889-90.
While BFIA maintains that the negotiations between the parties were terminated in January 1990, there is no dispute that a representative of BFIA telephoned EWC in June 1990 to say that the parties' negotiations were terminated. Despite BFIA's contention that the June communication was merely a "formal confirmation" of the termination of the negotiations, there is no documentary evidence indicating that the parties had terminated their relationship at any time earlier than June 1990; therefore, the date upon which these negotiations ended is, itself, a genuine issue of material fact.
BFIA also argues that "evidence relied on by EWC (an affidavit of a representative of the Blount County Commission filed for the first time on appeal in Environmental I) has now been developed in sworn deposition testimony [which] conclusively establishes that [BFIA] had no contact with Walker County until after the negotiations between EWC and BFIA terminated." However, the date "established" by this new deposition testimony — June 20, 1990 — is the date of ameeting between BFIA and Blount County officials, and the deponent also testified that he would have spoken with the BFIA representative at least a week before June 20 in order to set up their meeting for that date. In the context of the disputed date of the termination of the parties' negotiations, this evidence is not sufficient to support BFIA's motion for summary judgment.
We hold that, on remand, BFIA did not present evidence sufficient to justify the trial court's ignoring this Court's determination that "EWC presented substantial evidence supporting its claim of promissory fraud." Therefore, the summary judgment on EWC's claim of promissory fraud is reversed and this cause is remanded for proceedings consistent with this opinion.
APPLICATION FOR REHEARING GRANTED; OPINION OF MAY 16, 1997, WITHDRAWN; OPINION SUBSTITUTED; REVERSED AND REMANDED.
HOOPER, C.J., and ALMON, SHORES, and BUTTS, JJ., concur.
[1] We note the spelling of "WasteControl" in our earlier opinion. The record in the present appeal indicates the spelling should be "Waste Control."
[2] See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286,100 S.Ct. 559, 62 L.Ed.2d 490 (1980); VolkswagenwerkAktiengesellschaft v. Schlunk, 486 U.S. 694, 108 S.Ct. 2104,100 L.Ed.2d 722 (1988); and Horizons 2000, Inc. v. Smith,620 So.2d 606 (Ala. 1993).
[3] Rule 4.2, Ala. R. Civ. P., entitled "Process: Basis for and Methods of Out-of-State Service," defines "person" as "an individual, that persons's executor, administrator, or other personal representative, or a corporation, partnership, association, or any other legal or commercial entity." Rule 4.2(a)(3).