STEAGALL, Justice.
Plaintiff First Nationwide Bank, successor in interest by merger with St. Louis Federal Savings and Loan Association (hereinafter “St. Louis Federal”), is a federal savings bank with its principal place of business in San Francisco, California. Defendant Broadmoor Realty, Inc., successor by name change of East Perdido Properties, Inc. (hereinafter “East Perdido”), is an Alabama corporation with its principal place of business in St. Louis County, Missouri. Defendant Town and Campus International, Inc. (hereinafter “Town and Campus”), is a Missouri corporation with its principal place of business also in St. Louis County, Missouri.
On July 19, 1983, East Perdido (now Broadmoor Realty) executed a promissory note for $9,400,000 and an accompanying mortgage on certain real estate to First Nationwide, for which Town and Campus was guarantor. On August 26, 1983, East Perdido, Town and Campus, St. Louis Federal, Realty Sales, Inc., and First Prudential Corporation entered into a joint venture agreement under the name of Coastal Per-dido Properties (hereinafter “Coastal Perdi-do”) for the purpose of “acquiring, holding, developing, and selling certain real estate” in Baldwin County, Alabama. On August 30, 1983, Coastal Perdido assumed the mortgage given by East Perdido to First Nationwide. In an unrelated transaction, East Perdido executed another promissory note to First Nationwide on March 19, 1984, for $900,000 with a revolving line of credit, which was also guaranteed by Town and Campus.
When the joint venture defaulted on the mortgage and Broadmoor Realty defaulted on the revolving note, First Nationwide sued Broadmoor Realty, Town and Campus, and Coastal Perdido on September 22, 1987, demanding foreclosure on the mortgaged property and a money judgment on both promissory notes. The trial court granted partial summary judgment for First Nationwide on three of its six counts, ordering foreclosure of the mortgage and ordering Broadmoor Realty and Town and Campus to pay $1,177,008.93, representing the balance due on the $900,000 note plus interest and attorney fees.
Broadmoor Realty relies heavily on Cole v. Yearwood, 241 Ala. 437, 3 So.2d 1 (1941), for the general rule that a partner may not sue another partner prior to a dissolution of the partnership and an accounting. Cole is distinguishable from the instant case, however, because the note in that case, which provided that the parties would share equally in any losses in collections, was inextricably bound to the determination of the partnership’s profits and losses.
In another case, Moody v. Headrick, 247 Ala. 455, 25 So.2d 137 (1946), this Court held that for one partner to sue another partner, an accounting is not always necessary. In Moody, one partner in a coal business sued the other partner in equity on a contract between the two that was unrelated to the discontinuation and dissolution of the partnership. Under the contract, Moody was to receive the coal business, two company trucks, and all accounts receivable in exchange for relinquishment to Headrick of any and all claims to the cattle, livestock, and farm equipment acquired by the partnership and used in connection with the business. When Headrick failed to deliver one of the coal trucks and converted to his own use a check made payable to the company on one of its accounts, Moody sued in equity, arguing that legal remedies were unavailable because there had been no settlement of partnership accounts. The trial court sustained Headrick’s demurrer to the bill in equity, and this Court affirmed, stating:
“[T]he claims of the complainant for the truck and for the proceeds of the check require no accounting and a final closing of partnership affairs to ascertain what, if any, balance is due to each partner, because the claims of the complainant here sought to be enforced, are to be determined, not by accounting, but by the terms of the contract of sale made between the parties. The rights of the parties under this contract must be en *124 forced by legal remedies unless the inadequacy of such remedies is shown.”
Moody v. Headrick, 247 Ala. at 457, 25 So.2d at 138.
When confronted with a situation very similar to the present one, the Nebraska Supreme Court allowed a suit on a promissory note executed by one partner to the other, because “such an instrument itself constitutes an acknowledgement of a separate debt between the parties.” Linch v. Linch, 145 Neb. 792, 795, 18 N.W.2d 98, 99-100 (1945). While Linch acknowledged the general rule that one partner cannot sue another partner on matters relating to partnership business, it went on to clarify that principle:
“ ‘In suits upon contracts or transactions outside of the partnership, the partners stand in the same relation to each other in the courts as other persons. And where one partner has made advances or loans to another partner as an individual for the purpose of forming a partnership, or for furthering the interests and welfare of the partnership, the amount of such advances or loans is a personal debt of the promisor and is recoverable in an action at law without regard to the state of the partnership accounts.’ 21 Standard Ency. of Procedure 12, sec. 6.
“While such a suit upon a note is sometimes referred to as an exception to the rule that one partner may not maintain an action at law against another for breach of contract arising out of the partnership relation, it is more correct to say that they are not within the rule, because they are not within the reason of the rule. See 40 Am.Jur., sec. 475, p. 458.
“As supported by the authorities set out above, plaintiff had an unquestioned right to bring suit at law for the balance due on the promissory note, and we agree with the trial court that such a suit at law could not be turned into an equitable action for an accounting....”
Linch, 145 Neb. at 795-96, 18 N.W.2d at 100. See, also, Grigsby’s Executor v. Nance, 3 Ala. 347 (1842).
As in Moody and Linch, an accounting is unnecessary in this case, because the notes executed to First Nationwide by Broadm-oor Realty were separate from the business of the joint venture. In fact, the joint venture agreement specifically provides that “[t]he joint venture does hereby assume the payment of said loan” and that “[s]aid acquisition financing shall be secured by a First Mortgage superior to all other liens and encumbrances.”
In opposition to First Nationwide’s motion for summary judgment, Broadmoor Realty submitted affidavits by Emmett Capstick, president and chief executive officer of First Nationwide from 1980 until 1984, and Joseph Morrissey, Jr., chief executive officer of Broadmoor Realty and Town and Campus, in which both men stated that they felt specific sections of the joint venture agreement precluded foreclosure of the mortgage securing the $9,400,000 note. None of those sections referred to prohibits foreclosure or limits action on the previously executed mortgage in any way. Moreover, any attempt by Capstick and Morris to modify or add to the terms of the joint venture agreement would clearly violate the parol evidence rule. Tyler v. Equitable Life Assur. Soc. of the United States, 512 So.2d 55 (Ala.1987). The joint venture agreement specifically provides that the mortgage in question was to be superior to all other liens and encumbrances.
We conclude that Broadmoor Realty failed to provide substantial evidence that First Nationwide agreed to restrict its right of foreclosure. Because Broadmoor Realty does not contest the validity of the promissory notes themselves or of the mortgage sued upon, the trial court’s partial summary judgment regarding them was proper and is due to be affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, ADAMS and HOUSTON, JJ., concur.