This appeal presents two issues: 1) whether the trial court erred in denying the defendant's motion to set aside a foreclosure sale or, in the alternative, to deny confirmation of that sale, and 2) whether the trial court erred in entering a summary judgment for the plaintiff bank on the defendant's counterclaim seeking an accounting in equity. The parties have been before this Court previously. See Broadmoor Realty, Inc.v. First Nationwide Bank [hereinafter "Broadmoor I"],553 So.2d 122 (Ala. 1989). Although the issues in Broadmoor I were different from the two issues presented here, the factual circumstances that underlie the two separate appeals are the same.
 FACTS
The essential facts of this case were set forth inBroadmoor I, wherein we stated:
 "Plaintiff First Nationwide Bank, successor in interest by merger with St. Louis Federal Savings and Loan Association (hereinafter 'St. Louis Federal'), is a federal savings bank with its principal place of business in San Francisco, California. Defendant Broadmoor Realty, Inc., successor *Page 780 
by name change to East Perdido Properties, Inc. (hereinafter 'East Perdido'), is an Alabama corporation with its principal place of business in St. Louis County, Missouri. Defendant Town and Campus International, Inc. (hereinafter 'Town and Campus'), is a Missouri corporation with its principal place of business also in St. Louis County, Missouri.
 "On July 19, 1983, East Perdido (now Broadmoor Realty) executed a promissory note for $9,400,000 and an accompanying mortgage on certain real estate to First Nationwide, for which Town and Campus was guarantor. On August 26, 1983, East Perdido, Town and Campus, St. Louis Federal, Realty Sales, Inc., and First Prudential Corporation entered into a joint venture agreement under the name of Coastal Perdido Properties (hereinafter 'Coastal Perdido') for the purpose of 'acquiring, holding, developing, and selling certain real estate' in Baldwin County, Alabama. On August 30, 1983, Coastal Perdido assumed the mortgage given by East Perdido to First Nationwide. In an unrelated transaction, East Perdido executed another promissory note to First Nationwide on March 19, 1984, for $900,000 with a revolving line of credit, which was also guaranteed by Town and Campus.
 "When the joint venture defaulted on the mortgage and Broadmoor Realty defaulted on the revolving note, First Nationwide sued Broadmoor Realty, Town and Campus, and Coastal Perdido on September 22, 1987, demanding foreclosure on the mortgaged property and a money judgment on both promissory notes. The trial court granted partial summary judgment for First Nationwide on three of its six counts, ordering foreclosure of the mortgage and ordering Broadmoor Realty and Town and Campus to pay $1,177,008.93, representing the balance due on the $900,000 note plus interest and attorney fees."
553 So.2d at 123. In Broadmoor I, this Court held that the trial court did not err in entering a partial summary judgment for First Nationwide Bank (hereinafter "First Nationwide") on counts three, five, and six of its six-count complaint, which sought respectively, a court-ordered foreclosure sale of the real estate mortgaged by East Perdido (now Broadmoor Realty) to St. Louis Federal (now First Nationwide) to secure the $9,400,000 loan, a judgment against Broadmoor Realty for $994,131.36 plus interest and attorney fees owed to First Nationwide resulting from Broadmoor Realty's default on its $900,000 loan, and a judgment against Town and Campus, as guarantor of the $900,000 loan, for the amount to be entered against Broadmoor Realty resulting from its default on that loan.
Following the trial court's entry of summary judgment for First Nationwide on count three of its complaint (the count seeking a court-ordered foreclosure sale of the mortgaged property of Broadmoor Realty), First Nationwide filed a motion to receive a credit on its bid, in lieu of a cash bid, to be offered by it at the foreclosure sale to the extent of the judgment entered against Broadmoor Realty resulting from its default on First Nationwide's $9,400,000 loan.[1] Pursuant to the trial court's order, First Nationwide was permitted, at the foreclosure sale, to enter a non-cash bid to the extent of the debt owed to it by Broadmoor Realty. According to the register's report, First Nationwide, the sole bidder, offered a bid of $2,500,000 for the property, which was accepted by the register, and that amount was credited against the debt owed to First Nationwide by Broadmoor Realty. Following the trial court's confirmation of that foreclosure sale, a deed was issued by the register to First Nationwide, and after the trial court denied Broadmoor Realty's motion to set aside the foreclosure sale or, in the alternative, to deny confirmation of that sale, the *Page 781 
trial court entered a final order dismissing First Nationwide's three remaining counts against Broadmoor Realty, and also entered a summary judgment for First Nationwide on Broadmoor Realty's counterclaim seeking an accounting of the assets and liabilities of the joint venture named Coastal Perdido.[2]
 I
Broadmoor Realty argues that the trial court erred in permitting First Nationwide to receive a credit on its foreclosure bid to the extent of the judgment entered against Broadmoor Realty resulting from its default on the $9,400,000 loan. Broadmoor Realty argues that, because the notice of foreclosure sale specified that the foreclosed-upon property would be sold at public outcry "to the highest bidder for cash," the trial court could not permit First Nationwide to enter a non-cash bid for the property and consequently could not confirm the foreclosure sale. In support of that position, Broadmoor Realty cites the case of McCully v. Chapman, Adm'r,58 Ala. 325 (1877). That case involved the unauthorized decision by an administrator to sell estate property on credit and not "for cash" as explicitly ordered by the probate court. We find that case to be distinguishable. Unlike the McCully
case, the trial court in this case expressly stated in its order that First Nationwide could receive a credit on its bid offered at the foreclosure sale to the extent of the judgment entered against Broadmoor Realty resulting from its default on the $9,400,000 loan. The fact that the trial court entered that order after the foreclosure sale announcement had been published in the local paper is not critical.
The underlying purpose of a foreclosure sale is to sell property at public outcry in order to generate funds to pay the affected creditors. To force First Nationwide, the sole creditor, to tender a "cash bid" at a foreclosure sale for property that it initially looked to as security for its loan to Broadmoor Realty is unnecessary in light of the fact that any cash bid given by First Nationwide at the foreclosure sale would later be returned to it and credited against the debt owed by Broadmoor Realty. To require the "cash bid" here would be to elevate form over substance. The logic of not requiring a "cash bid" in a case such as this has already been noted in other courts. See In re Renne, 55 F. Supp. 868 (D.C.Neb. 1944);Mogilka v. Jeka, 131 Wis.2d 459, 389 N.W.2d 359 (Wis.App.), review dismissed, 131 Wis.2d 594, 393 N.W.2d 297 (1986);Pennington v. Purcell, 155 Miss. 554, 125 So. 79 (1929).
For the aforementioned reasons, we affirm the trial court's order permitting First Nationwide to use its judgment entered against Broadmoor Realty to pay its bid price for the foreclosure property in lieu of a cash bid, as well as its denial of Broadmoor Realty's motion to set aside the foreclosure sale or, in the alternative, to deny confirmation of that sale.
 II
The second and final issue raised by Broadmoor Realty involves the summary judgment for First Nationwide on Broadmoor Realty's counterclaim seeking an accounting in equity of the assets, credits, debts, liabilities, transactions, and dealings of Coastal Perdido. As noted earlier, the partners of Coastal Perdido were East Perdido (now Broadmoor Realty) and Realty Sales. At the time of Realty Sales' involvement in the joint venture, it was a wholly owned subsidiary of First Nationwide. Under the terms of their joint venture agreement, Broadmoor Realty and Realty Sales agreed to make contributions to a common fund for the sole purpose of "acquiring, holding, developing, and selling" certain real estate located in Baldwin County. Furthermore, the agreement stated that upon "termination of this Joint Venture, all assets of the Joint Venture shall be distributed to the parties then entitled thereto, and a final accounting shall be *Page 782 
made of the assets, credits, debts, liabilities, transactions, and dealings of the Joint Venture." The agreement also stipulated that the partners would share equally in the profits and losses generated by their joint venture.
In order to acquire the funds needed to purchase the desired real estate, Broadmoor Realty and Realty Sales (i.e. Coastal Perdido) stipulated in their joint venture agreement that Coastal Perdido would assume payment of the mortgage note executed by Broadmoor Realty to St. Louis Federal (now First Nationwide). Because of its assumption of that note, Coastal Perdido assumed control of the unused loan proceeds available to it.[3] As noted in our excerpt from Broadmoor I, when Coastal Perdido defaulted on its assumed note, First Nationwide sued Broadmoor Realty, Town and Campus, and Coastal Perdido.
In its answer filed in response to First Nationwide's complaint, Broadmoor Realty asserted a counterclaim against First Nationwide, in which Broadmoor Realty demanded that the trial court order an accounting of the assets, credits, debts, liabilities, transactions, and dealings of the joint venture known as Coastal Perdido in order to terminate the partnership. First Nationwide filed a motion for summary judgment on Broadmoor Realty's counterclaim, which the trial court granted. We hold that the summary judgment was appropriate.
As this Court stated in Greene v. Thompson, 554 So.2d 376,378-79 (Ala. 1989):
 "Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56, A.R.Civ.P. All reasonable doubts concerning the existence of a genuine issue of material fact must be resolved against the moving party. The applicable standard of review is the 'substantial evidence rule.' Ala. Code, 1975, § 12-21-12; Perry v. Hancock Fabrics, Inc., 541 So.2d 521 (Ala. 1989).
 "The propriety of a summary judgment must be tested by reviewing what the trial court had before it when it entered the judgment. Willis v. Ideal Basic Industries, Inc., 484 So.2d 444 (Ala. 1986). The trial court may consider pleadings, answers to interrogatories, depositions, and affidavits in determining whether there is a genuine issue of material fact. Rule 56(c), A.R.Civ.P."
At the time First Nationwide filed its motion for summary judgment, the trial court had before it the pleadings, the joint venture agreement, and various affidavits of parties allegedly familiar with the joint venture partnership.
As we understand Broadmoor Realty's position in its counterclaim against First Nationwide seeking an accounting of the operations of Coastal Perdido, it is that Broadmoor Realty claims that First Nationwide is a partner in Coastal Perdido and, therefore, is subject to an action for an accounting of the operations of that partnership. As this Court stated inWorley v. Worley, 388 So.2d 502, 506 (Ala. 1980), "In any action for an accounting, it is the responsibility of the trial court to determine the preliminary question of whether an individual is entitled to that relief."
Alabama, like other states, statutorily recognizes the right of a partner to seek an accounting as to matters growing out of the partnership.[4] In fact, a partner *Page 783 
must seek an accounting in equity before he can commence an action at law against his copartner on matters growing out of their partnership. In Broda v. Greenwald, 66 Ala. 538, 542
(1880), this Court, in addressing the right of a partner to commence an action at law against a copartner, declared:
 "It is settled law, that one partner cannot sue the other at law, on any claim originating in their partnership dealings, unless there has been a settlement of partnership accounts, and an ascertained balance due from one to the other. — 2 Brick.Dig. 309, §§ 138, 143; Morrow v. Riley, 15 Ala. 710. The only theory, on which the suit and recovery at law could be maintained, was, and is, that there had been such settlement, and balance ascertained."
First Nationwide answered Broadmoor Realty's counterclaim for an accounting and claimed that it was never a partner in the joint venture; in fact, First Nationwide asserted in that same answer that Broadmoor Realty had always been in "total control of the books, records and accounts of the partnership." First Nationwide asserts in its brief that its position in relationship to Coastal Perdido was merely that of a lender, not a partner. In support of its argument, First Nationwide included the following excerpt taken from the joint venture agreement:
 "THIS JOINT VENTURE AGREEMENT is made and entered into as of this 26th day of August, 1983, by and between REALTY SALES, INC., a Missouri Corporation, hereinafter referred to as 'Realty,' and EAST PERDIDO PROPERTIES, INC., an Alabama corporation, hereinafter referred to as 'East', (which parties are hereinafter sometimes referred to as 'Joint Venturers'), TOWN AND CAMPUS INTERNATIONAL, INC., a Missouri corporation, and FIRST PRUDENTIAL CORPORATION, a Missouri corporation, hereinafter referred to as 'Guarantors', and ST. LOUIS FEDERAL SAVINGS AND LOAN ASSOCIATION, a federally chartered savings and loan association, hereinafter referred to as 'Lender'[.]"
Additionally, First Nationwide included the following excerpt taken from the agreement to bolster its argument that its only relationship with Coastal Perdido was that of a mere lender, not a partner:
 "B. If a determination is made by the Joint Venturers that it is feasible to proceed with the construction and sale of condominiums on the Subject Property as contemplated herein, Lender agrees to lend to the Joint Venture sufficient funds for the construction of said condominiums on terms which are generally available from the Association; provided, however, that the amount of any such loan does not exceed the amount which Lender may lend pursuant to applicable Federal and State statutes and regulations. The Joint Venturers shall have the option to obtain such financing elsewhere if more favorable terms are available."
A clear reading of the aforementioned excerpts taken from the joint venture agreement shows that First Nationwide was never intended to be a partner in Coastal Perdido.
The only relationship that First Nationwide had with the partnership was that of a lender, not a partner, even though one of the partners was a wholly owned subsidiary of First Nationwide; therefore, the trial court did not err in entering the summary judgment in favor of First Nationwide. Broadmoor Realty's argument that because Realty Sales was a subsidiary of its parent corporation, St. Louis Federal (now First Nationwide), at the time of its participation in the joint venture, that fact somehow transformed First Nationwide's position from one of a lender to the partnership to that of a participating partner is not supported *Page 784 
by the law or the facts. The only way Broadmoor Realty's argument could be supported is if it could demonstrate that Realty Sales was a "mere adjunct, instrumentality, or alter ego" of its parent corporation, First Nationwide. See Ex parteBaker, 432 So.2d 1281, 1284 (Ala. 1983); Birmingham Realty Co.v. Crossett, 210 Ala. 650, 98 So. 895 (1923); Krivo IndustrialSupply Co. v. National Distillers Chemical Corp.,483 F.2d 1098 (5th Cir. 1973). The record is devoid of any evidence that Realty Sales was a mere adjunct, instrumentality, or alter ego of its parent, First Nationwide; consequently, the trial court did not err in granting First Nationwide's motion for summary judgment on Broadmoor Realty's counterclaim.
Accordingly, the judgment of the trial court is affirmed.
AFFIRMED.
HORNSBY, C.J., and ALMON, ADAMS and STEAGALL, JJ., concur.
[1] As noted earlier in this opinion, the principal amount of First Nationwide's loan to East Perdido (now Broadmoor Realty), which was secured by the mortgage on the later-foreclosed-upon property, was $9,400,000. At the time of its complaint, First Nationwide claimed accrued loan interest owed to it of $819,507.33. The total amount of the debt claimed by First Nationwide at the time of its complaint against Broadmoor Realty was $10,219,507.33.
[2] The partners of the joint venture were East Perdido and Realty Sales, Inc. Realty Sales, at the time of its involvement in the joint venture, was a wholly owned subsidiary of First Nationwide.
[3] The joint venture agreement also stipulated that Town and Campus would act as guarantor on the mortgage assumed by Coastal Perdido.
[4] Ala. Code 1975, § 10-8-47, which is part of the Alabama Partnership Act, reads as follows:
"§ 10-8-47. Right of partner to formal accounting.
 "Any partner shall have the right to a formal accounting as to partnership affairs:
 "(1) If he is wrongfully excluded from the partnership business or possession of its property by his copartners;
"(2) If the right exists under the terms of any agreement;
"(3) As provided by section 10-8-48; or
 "(4) Whenever other circumstances render it just and reasonable."
Ala. Code 1975, § 10-8-48, states the following:
"§ 10-8-48. Partner accountable as fiduciary.
 "(a) Every partner must account to the partnership for any benefit and hold as trustee for the partnership any profits derived by him without the consent of the other partners from any transaction connected with the formation, conduct, or liquidation of the partnership or from any use by him of the partnership property.
 "(b) This section applies also to the representatives of a deceased partner engaged in the liquidation of the affairs of the partnership as the personal representatives of the last surviving partner."