These petitions for the writ of mandamus arise out of a pending lawsuit between a partner and his copartners; the plaintiff has alleged multiple claims arising out of partnership business. The controlling legal issue presented by these petitions is whether the plaintiff must seek an equitable accounting before proceeding with his action at law for damages. Our answer to this question depends on whether the Alabama Partnership Act ("APA"), in effect at the time of the formation of the partnership, applies, or whether the Alabama Uniform Partnership Act ("AUPA") (repealing *Page 194 
the APA) applies. The trial court concluded that the provisions of the AUPA applied; it therefore denied the defendants' motions for a summary judgment and their alternative motions to strike the plaintiff's jury demand, each of which raised this legal issue.
 Facts and Procedural History
Wayne R. Mitchell, the plaintiff in this action, and Elton O. Tanner, James Michael Rice, and Master Boat Builders, Inc. ("MBB"), the defendants, formed several partnerships during the mid-1980s; these petitions relate to two of them. The first partnership, entitled MASCO I, was formed on December 28, 1984, in order to manage the operation of an oil supply vessel, for which the partnership was named. The managing partners of MASCO I included Tanner and Rice. According to the MASCO I partnership agreement, Mitchell and MBB were general partners only. The second partnership, MASCO IV, was formed on March 18, 1985. Although MASCO IV's partnership agreement listed MBB as its only managing partner, Rice, as MBB's president, actually managed MASCO IV's affairs. The general partners of MASCO IV included Mitchell and Tanner.
Mitchell held a 10% interest in each partnership, based on his contributions of $18,500 to MASCO I and $19,500 to MASCO IV. His capital contributions gave him proportional shares in the vessels owned by each partnership and entitled him to 10% of the income from both operations after the deduction of certain expenses.
In October 1996, Mitchell was notified by the other partners of MASCO I and MASCO IV that they wished to dissolve the partnership. Mitchell, unhappy with the dissolutions, balked at the offers of $20,000 for his shares in each partnership and requested that Tanner, who provided accounting services for MASCO I and MASCO IV (as well as for Mitchell individually), provide him with information explaining his distributions. Tanner refused to do so. Mitchell also requested similar information from the defendants, but was refused by them as well.
Mitchell sued Tanner, Rice, and MBB (sometimes collectively referred to herein as "the defendants") in May 1997, alleging suppression, breach of fiduciary duty, conversion, and misrepresentation.[1] Mitchell also alleged that Tanner, in his capacity as Mitchell's personal accountant, had committed accounting malpractice with respect to his handling of Mitchell's investment in the partnership. Mitchell sought damages for each of these claims, all of which — with the exception of the accounting-malpractice claim — arise out of partnership affairs, but he did not seek an equitable accounting before requesting such damages. Each of the defendants answered by affirmatively asserting that Mitchell's failure to request an equitable accounting before filing an action for damages precluded the action against them. The defendants moved to dismiss Mitchell's complaint on that basis, or, alternatively, to strike Mitchell's jury demand. The record before us suggests that the trial court denied those motions.
In August 1999, the defendants, in motions for summary judgment, again argued that an equitable accounting was necessary before Mitchell's claims could proceed to a jury trial, and again the trial court disagreed and denied the motions. The defendants then filed these petitions, seeking writs of mandamus directing the trial court to set aside its orders denying the motions for summary judgment. In their petitions, the defendants seek writs instructing the trial court to either enter judgments in their favor or strike Mitchell's jury demand. We grant parts of the relief requested. *Page 195 
 Discussion
As we have already said, the precise issue presented in this case is this: Which one of Alabama's two partnership acts applies to Mitchell's claims, the APA or the AUPA?
Before the passage of either Act, this Court had always adhered to the common-law principle that a partner may not recover in an action at law against fellow partners for matters arising out of partnership affairs until there had been a settlement of partnership accounts. BroadmoorRealty, Inc. v. First Nationwide Bank, 568 So.2d 779, 783 (Ala. 1990);Sanders v. Kirkland Co., 510 So.2d 138, 140 (Ala. 1987); Hunter v.Parkman, 254 Ala. 494, 498, 48 So.2d 878, 881 (1950). This principle was grounded in notions of equity that had long been a part of our law. The enactment of the APA in 1971 was considered by this Court to be a codification of that principle, cf. Broadmoor Realty, 568 So.2d at 783, a position that was consistent with the position of most jurisdictions that had adopted the same basic set of partnership statutes generally known as the Uniform Partnership Act, or "UPA." See Harold Gill Reuschlein William A. Gregory, The Law of Agency and Partnership 287 (2d ed. 1990). Indeed, the APA (or UPA) provided for an accounting as the only apparent remedy to partners for claims arising out of partnership business. See § 10-8-47, Ala. Code 1975; see alsoBroadmoor Realty, 568 So.2d at 782-83 (citing § 10-8-47 in footnote 4 and discussing Alabama's historical view of actions between partners).
In 1996, however, the Legislature enacted the AUPA, marking a significant departure from the previous view of intrapartnership actions. This Act provided partners with the option of forgoing an equitable accounting before pursuing actions at law against copartners. §10-8A-405(b), Ala. Code 1975. This change reflected a rejection of the traditional view that actions between partners involving partnership affairs were exclusively equitable actions, a view that was the foundation of any remedy under the repealed APA. Thus, the question whether the APA or the AUPA applies to Mitchell's partnership claims — a question that impacts his right to a jury trial as to those claims — ultimately requires this Court to decide whether those claims lie only within the trial court's equitable jurisdiction, a question that can be determined only from an examination of the provisions of the AUPA regarding its application to partnerships formed before December 31, 2000. Because the issue presented involves a question whether the underlying claims are with the court's equitable jurisdiction, it is clear that the issues stated in the defendants' petitions are reviewable on a mandamus petition. See Ex parteSouthTrust Bank, 679 So.2d 645, 646-47 (Ala. 1996) (holding that mandamus review is proper where "the question is whether the plaintiff's claims are within the exclusive jurisdiction of equity"); see also Exparte Merchants Nat'l Bank of Mobile, 257 Ala. 663, 665, 60 So.2d 284,286 (1952) (holding that decisions regarding the availability of a jury are reviewable by mandamus).
The standard governing our review of an issue presented in a petition for the writ of mandamus is well established:
 "[M]andamus is a drastic and extraordinary writ to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court."
Ex parte Edgar, 543 So.2d 682, 684 (Ala. 1989). These petitions call for this Court to review the trial court's refusal to strike the plaintiff's jury demand and to require an accounting. We conclude that mandamus relief is available for these defendants, provided they meet the usual requirements for the issuance of the writ. *Page 196 
We must construe § 10-8A-1106, Ala. Code 1975, which determines how the AUPA applies to partnerships that were formed before the AUPA's effective date, as these partnerships were. Section 10-8A-1106 states, in pertinent part:
 "(a) Before January 1, 2001, this chapter governs only a partnership formed:
 "(1) after the effective date of this chapter [January 1, 1997], unless that partnership is continuing the business of a dissolved partnership under Section 10-8-102 of the Alabama Partnership Act (1971); and
 "(2) before the effective date of this chapter, that elects, as provided by subsection (c), to be governed by this chapter.
 "(b) After December 31, 2000, this chapter governs all partnerships.
 "(c) Before January 1, 2001, a partnership voluntarily may elect, in the manner provided in its partnership agreement or by law for amending the partnership agreement, to be governed by this chapter. . . ."
Because the partnerships in this case were formed before December 31, 2000, and there has been no pertinent election made pursuant to subsection (c), subsection (a) is the only applicable portion of this section.
In reading subsection (a), this Court must look to the plain meaning of the language chosen by the Legislature, because that language is the strongest expression of the Legislature's intent. This Court has previously stated:
 "The fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature in enacting the statute. Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect."
IMED Corp. v. Systems Eng'g Assocs. Corp., 602 So.2d 344, 346 (Ala. 1992).
Mitchell argues in his brief that subsection (a)(1) provides that the AUPA applies to any partnership "continuing in business although `dissolved' within the terms of the former provisions of the [APA]" without regard as to when that partnership was formed, and that the facts presented in this case show that "the partnerships were technically `dissolved.'" We believe this reading of the provisions of the AUPA is too narrow.
Although we do not believe the partnerships had been "dissolved" when the action was filed, we primarily note that the construction urged by Mitchell ignores the text of the subsection when read in its entirety. Subsection (a)(1), in its plain terms, states that until January 1, 2001, the AUPA applies only to a partnership formed after January 1, 1997,unless the partnership formed after that date "is continuing the business of a dissolved partnership under . . . [the APA]." §10-8A-1106(a)(1), Ala. Code 1975. We interpret this provision to mean precisely what it says — that the AUPA applies to any partnership formed between January 1, 1997, and January 1, 2001, unless that partnership is doing business as a dissolved partnership.
We also note that the Legislature separately addresses partnerships formed before the effective date of the AUPA in subsection (a)(2). This paragraph states that for the AUPA to apply to a partnership formed before the AUPA's effective date, that partnership must have made the applicable election under subsection (c). We have often stated that "the meaning of statutory language depends on context," and that, as a result, statutes must be read as whole in order to ascertain the meaning and intent of each component. Ex parte Jackson, 614 So.2d 405, 406 (Ala. 1993). *Page 197 
Thus, we are unable to conclude, as the respondent (plaintiff) urges us to do, that the latter portion of subsection (a)(1), which contains a proviso regarding dissolved partnerships, refers to a class of partnerships that are separate from those formed after January 1, 1997, and before January 1, 2001.
It is undisputed that MASCO I and MASCO IV were formed in 1984 and 1985 respectively; therefore, we conclude that § 10-8A-1106 does not apply to these partnerships, because MASCO I and MASCO IV were formed long before the first possible effective date in that section. Because this section does not apply to either of these partnerships, the AUPA, as a whole, cannot apply. For that reason, we hold that the question whether Mitchell is entitled to a jury trial is governed by the APA.
As we stated earlier, this Court has always held the view that the APA merely codified the historical remedy provided at common law to a partner who has sued fellow partners over matters that resulted from partnership affairs,[2] and this remedy has always required an equitable accounting. Broadmoor Realty, 568 So.2d at 782-83. We note, as an initial matter, that we cannot conclude that Mitchell's failure to seek an accounting calls for either a dismissal of his complaint or a summary judgment against him, and, therefore, we choose not to issue a writ directing the trial court to vacate its orders denying the defendants' motions for summary judgment. Nevertheless, we observe that an accounting is indeed necessary before Mitchell can recover any damages, and that his action for damages cannot proceed before a settling of partnership accounts has occurred. Therefore, we conclude that Mitchell is not entitled to a jury at this time for all claims arising out of the partnership business.[3]
We conclude, however, that Mitchell's claim against Tanner alleging accounting malpractice does not arise out of the partnership business, and is therefore not subject to the requirement that there be an equitable accounting before damages may be recovered. We note that an accounting is not always necessary before a partner can sue a copartner.Moody v. Headrick, 247 Ala. 455, 457, 25 So.2d 137, 139 (1946). InBroadmoor Realty, Inc. v. First Nationwide Bank, 553 So.2d 122 (Ala. 1989), this Court stated, "`"In suits upon contracts or transactions outside of the partnership, the partners stand in the same relation to each other in the courts as other persons."'" 553 So.2d at 124 (quotingLinch v. Linch, 145 Neb. 792, 795, 18 N.W.2d 98, 100 (1945) (citation omitted)). Thus, if the business relationship from which the claims arise is not in furtherance of the partnership's business, then that relationship cannot be said to "arise" out of that partnership within the meaning of the rule under the APA.
The essence of the relationship determines whether it arises out of partnership business. Mitchell and Tanner shared an accountant-client relationship outside the partnership operations, and Mitchell's accounting-malpractice claim arises out of that relationship rather than out of his dealings with Tanner as his partner in MASCO I and MASCO IV. For *Page 198 
that reason, we conclude that the trial court did not abuse its discretion in denying the motion to strike Mitchell's jury demand as to this particular claim.
Based on the foregoing, we issue a writ directing the trial court to set aside its order denying the defendants' motions to strike Mitchell's jury demand as to all claims arising out of partnership business — not including Mitchell's claim against Tanner for accounting malpractice — until there has been a final settlement of all partnership accounts. After a final settlement of all partnership accounts, Mitchell's jury demand will be reinstated.
1991229 — PETITION GRANTED IN PART; WRIT ISSUED.
1991245 — PETITION GRANTED IN PART; WRIT ISSUED.
Hooper, C.J., and Houston, Cook, See, Lyons, Brown, and England, JJ., concur.
Johnstone, J., concurs in the result.
JOHNSTONE, Justice (concurring in the result).
I concur in the result because the main opinion, by limiting the relief granted and preserving the plaintiff's right to a jury trial of his damages claims against all defendants, achieves substantial justice. My reservation with the rationale is that the plaintiff did duly demand the partnership accountings and the defendants refused the plaintiff the accountings before the plaintiff filed his action.
[1] These claims are based on Mitchell's allegations that the defendants had engaged in malfeasance with respect to the management of the capital assets held by MASCO I and MASCO IV.
[2] The only course of action that a partner may initially seek under the APA for wrongs committed within the context of a partnership is found in § 10-8-47, Ala. Code 1975. We note that the Legislature has since expanded the possible courses of action that a partner may seek with its enactment of § 10-8A-405, Ala. Code 1975, which has replaced § 10-8-47 as a course of action for only those partnerships satisfying the conditions prescribed by § 10-8A-1106.
[3] Mitchell argues in his brief that the defendants waived the issues raised in these petitions by not pleading these matters in their answer to Mitchell's first complaint. We conclude that this argument is without merit, because the defendants properly pleaded these issues in their answers to Mitchell's subsequently filed amended complaint. See
Rule 8(c), Ala.R.Civ.P.