MOORE, Judge.
 

 The Alabama Department of Industrial Relations (“ADIR”) appeals from a judgment entered by the Marengo Circuit Court (“the trial court”) in favor of AHI Linden Lumber, LLC (“AHI”), on February 24, 2009. Because the trial court’s judgment recalculated AHI’s unemployment-compensation contribution rate and the benefit ratio used to determine the contribution rate for the year 2009 based solely on the trial court’s determination that AHI was not a successor in interest to Linden Lumber Company, Ltd. (“Linden Lumber”) — a determination the trial court did not have the authority to make — we reverse the trial court’s judgment and remand the cause with instructions.
 

 Facts
 

 According to Hugh Overmeyer, Linden Lumber began operation in the 1950s and was owned by his grandfather. Eventually, Hugh and his father, Don Overmeyer, gained ownership of Linden Lumber, which began to encounter economic difficulties in 2006 and 2007. At one time, Linden Lumber employed 700 to 800 people, but, by late 2007, the workforce had been reduced to between 200 and 400 employees. Hugh testified that Linden Lumber owned approximately 800 acres of land in Linden, which included a sawmill and flooring plants, as well as a flooring plant that sat on 60 acres of land in Thomasville, a wood yard that sat on 20 acres of land in Mississippi, and timberland in various Alabama counties. The primary lender on loans secured by Linden Lumber’s property was Federal Land Bank; Wachovia Bank was the secondary lender. Hugh testified that, at a meeting in 2007 with employees from Federal Land Bank and Wachovia Bank, certified appraisals revealed that the value of Linden Lumber exceeded $30 million. Federal Land Bank commenced foreclosure proceedings on Linden Lumber’s property in 2007. According to Hugh, in order to avoid closure, Linden Lumber sought a purchaser for the sawmill and the flooring plants located in Linden. Hugh testified that HIG Capital and Ted Rossy formed AHI and acquired some of the assets of Linden Lumber, including the sawmill in Linden; that sale took place on March 31, 2008, and, according to Hugh, AHI paid approximately $10 million for the assets it purchased from Linden Lumber. Hugh stated that he and his father had had equity in Linden Lumber at the time of the sale and that they lost that equity upon the sale to AHI.
 

 Hugh testified that AHI acquired approximately 153 acres of land owned by Linden Lumber, including the sawmill, located in Linden. AHI did not acquire the other approximately 650 acres of land in Linden, the 20 acres located in Mississippi, the 60 acres located in Thomasville, or any of the timberland located in various Alabama counties. Hugh stated that neither he nor his father held an ownership interest in AHI but that Hugh continued as an employee of AHI and acted as the vice president of AHI. Hugh described the sale of Linden Lumber’s assets to AHI as an asset purchase and stated that AHI was not a successor company to Linden Lumber. According to Hugh, AHI was formed and it had secured a separate independent
 
 *189
 
 employer’s identification number from the Internal Revenue Service before the sale on March 31, 2008. Hugh testified that AHI retained over 90% of the employees from Linden Lumber and that AHI continued the business of Linden Lumber without stopping operations. He testified, however, that Linden Lumber had discharged each of its employees and that AHI had hired some of those employees, some with different terms of employment including lower rates of pay, along -with some additional employees. Hugh stated that AHI had shut down parts of the sawmill upon the sale because of the economy but that AHI had never shut down operations entirely.
 

 Terry Dunham, the office and credit manager at AHI, stated that he had worked for Linden Lumber for 31 years. Dunham testified that Hugh and his father had no ownership interest in AHI, that they did not receive any equity at the time of the sale, and that they had lost their investments in Linden Lumber. Dunham stated that the value of the assets of Linden Lumber that were not acquired by AHI at the time of the sale was probably “somewhere around $20 million.” Dunham testified that he had written a letter to ADIR dated May 2, 2008, in which he requested an employer account number for AHI, and that he had enclosed an application, which had been signed by Hugh on behalf of AHI, to determine AHI’s liability for payment of unemployment-compensation benefits. In that letter, Dunham stated that “[AHI] purchased all of the assets of [Linden Lumber].” Dunham testified that, at the time he wrote that letter, the other assets of Linden Lumber had “gone away” or been bought by other entities and that what had been sold to AHI was all that was left of Linden Lumber at the time of the sale.
 

 In a document responding to Dunham’s letter, entitled “Official Notification of Registration” (“the notification letter”), dated May 13, 2008, ADIR informed AHI that it had determined AHI to be a “successor-in-interest” to Linden Lumber; it also assigned AHI an employer account number and informed AHI of its unemployment-compensation contribution rate. The notification letter stated, in pertinent part:
 

 “The determination for your liability and tax rate is based on the information furnished [to ADIR], If it is later determined, however, that the information was incorrect, whether or not it was known to be incorrect when furnished, the determination of liability and/or tax rate may be adjusted using the correct information if received within the protest period. If you disagree with this determination, a written protest must be filed within thirty (30) days from the date of this letter.”
 

 (Bold typeface in original.)
 

 Hugh explained his understanding that, in determining a company’s contribution rate, ADIR would assign an “experience rating” based on the company’s employment and unemployment history for the preceding three years. He testified that his understanding is that, in assigning a company an experience rating, ADIR looks at the company’s history of layoffs and the number of employees that have drawn unemployment. According to Hugh, because Linden Lumber had been in a downward spiral before the sale, there were a lot of layoffs that had driven Linden Lumber’s unemployment contributions up during its last three years of operation and, as a result, had required Linden Lumber to pay more than its usual amount in unemployment contributions. Hugh testified that a protest of the determinations in ADIR’s May 13, 2008, notification letter
 
 *190
 
 had not been filed by AHI within the appeal time stated in the letter but that a protest was filed later. He testified that ADIR remitted a document to AHI entitled “Experience Rating Charges,” which was mailed on August 6, 2008, that listed the unemployment-compensation benefits that had been paid to AHI’s workers in the calendar quarter ending June 80, 2008. That document states, in pertinent part, that “[c]harges become final unless request for review is submitted within 80 days from the mailing date.” Jo Doyle, the sections supervisor for experience rating in the status unit of ADIR, testified that AHI failed to file an appeal from the experience-rating charges within 30 days of the mailing date of the document.
 

 Hugh stated that, although AHI was late to appeal the contribution rate that was set by AHI, it did appeal the contribution rate for the 2009 year. In a letter dated April 20, 2009, ADIR informed AHI that an administrative review of AHI’s unemployment-compensation contribution rate for the calendar year 2009 had been conducted and that it had determined that the rate was correct. That letter stated, in pertinent part:
 

 “As the initial establishment of your account and the unemployment tax rate for the calendar year 2008 were not timely protested, the appeal process has ended. However, if your company continues to disagree with the unemployment tax rate for calendar year 2009, further appeal should be made to the circuit court in the county where the business is located or Montgomery County. The request must be submitted within thirty (30) days from the date of this letter as provided for in Section 25-5-54(h) and implemented by Section 25-4-134 of the Code of Alabama 1975 amended.”
 

 Hugh testified that, as far as the determination that AHI was a successor in interest to Linden Lumber, nothing had changed between May 13, 2008, when the notification letter was sent, and April 20, 2009, when the letter denying AHI’s appeal was sent.
 

 Doyle testified that she establishes or oversees the establishment of employer accounts and the experience ratings of employers. Doyle stated that an employer’s experience rating is based on three years of physical experience of an employer. She stated that “[a]n employer who acquires the ongoing business, trade, or substantially all the assets of another company establishes their rate based on the experience of another company, or, if you start out at a brand new rate, then you start out with an average rate which does not require any kind of calculation but is a much lower rate.” She stated that the contribution rate for a new employer with no experience rating is 2.70% of wages paid and that, at the time of AHI’s acquisition of Linden Lumber, based on Linden Lumber’s experience rating, Linden Lumber’s contribution rate was 6.24% of its “taxable wages and benefit charges.” Doyle testified that ADIR had received a letter from AHI in May 2008, along with the letter from Dunham, informing ADIR that AHI had purchased all the assets of Linden Lumber. She stated that the application to determine liability signed by Hugh on May 2, 2008, reflected that AHI was the successor in interest to Linden Lumber and that AHI had 200 employees, including Hugh as vice president of the company. Doyle stated that ADIR then mailed the notification letter to AHI on May 13, 2008, which informed AHI of its contribution rate, its employer account number, and that it was being treated as a successor in interest to Linden Lumber; that letter also informed AHI that a written protest must be filed within 30 days if
 
 *191
 
 it disagreed with ADIR’s determinations. According to Doyle, ADIR’s records indicate that an appeal was not filed until October 2, 2008.
 

 According to Doyle, in determining a company’s contribution rate, ADIR looks at whether a company that acquires an ongoing business continues to conduct the same type of operation that the previous company conducted and at whether a substantial number of the employees were acquired from the predecessor company by the successor company. She stated that, in the present case, ADIR made the determination that AHI was a successor in interest to Linden Lumber based on what AHI had submitted to ADIR. She stated that there was a timely appeal by AHI of the contribution rate and the benefit ratio assigned to AHI by ADIR for the calendar year 2009. She stated further, however, that the 2009 contribution rate had been based on the successorship that was confirmed in May 2008. Doyle testified that it was too late to appeal the successorship determination because it had already become final. She stated that AHI’s appeal was denied because it was premised on the assertion that AHI is not the successor in interest to Linden Lumber. Doyle testified further that whatever is left of a business entity at the time of the sale is what is considered by ADIR in determining whether the purchasing company is a successor in interest.
 

 Procedural History
 

 AHI appealed ADIR’s April 20, 2009, decision to the trial court, pursuant to § 25-4-54(h), Ala.Code 1975, on May 11, 2009. AHI asserted that it was not a successor in interest to Linden Lumber and that the benefit ratio and contribution rate established by ADIR based on that premise were in error. ADIR filed an answer to AHI’s notice of appeal on June 25, 2009.
 

 On February 24, 2010, the trial court entered a judgment in which it determined that AHI was not a successor in interest to Linden Lumber and that the unemployment-compensation contribution rate for AHI should be calculated based on AHI’s being a new corporation, with that calculation not taking into consideration the experience rating of Linden Lumber. ADIR filed a Rule 59(e), Ala. R. Civ. P., post-judgment motion on March 19, 2010; that motion was denied by operation of law on June 17, 2010. ADIR filed a notice of appeal to this court on June 28, 2010.
 

 Discussion
 

 On appeal, ADIR first argues that the determination that AHI was a successor in interest to Linden Lumber was a final decision and, thus, unappealable because, it says, AHI failed to file a timely protest of that determination, which was sent to AHI by ADIR on May 13, 2008. Specifically, ADIR asserts that subsections (c)(3) and (h) of § 25-4-54, Ala.Code 1975, prohibit AHI from appealing the May 2008 determination that it is a successor in interest to Linden Lumber and act to divest the trial court of “jurisdiction” to overturn that determination.
 

 “Our review of questions of law is de novo.”
 
 Dabbs v. SRE, Inc.,
 
 992 So.2d 15,18 (Ala.Civ.App.2008). Section 25-4-54 provides, in pertinent part:
 

 “(c) Determination of employer benefit charges.
 

 [[Image here]]
 

 “(3) The director [of ADIR] shall, after the close of each calendar quarter, furnish each employer with a statement of the benefits paid to his workers, or former workers, which became his benefit charges in that calendar quarter, together with the names of such workers, or former workers, and such statement, in the absence of
 
 *192
 
 an application for a revision thereof within 30 days of the mailing of such statement to the employer’s last known address, shall be conclusive and final upon the employer for all purposes and in all proceedings whatsoever ....
 

 [[Image here]]
 

 “(d) Determination of employer benefit ratio. Effective January 1, 1997, and each year thereafter, the benefit ratio of each employer who qualifies for a rate determination under subdivision (a)(1) of this section and has been chargeable with benefits throughout the three most recent preceding fiscal years shall be a percentage obtained by dividing the total of his benefit charges for such three-year period by that part of his total taxable payroll for the same three-year period with respect to which contributions have been paid on or before July 31, next following such period.... The employers benefit ratio shall be computed to the fourth decimal and be used in determining each employer’s contribution rate as prescribed in subsection (a) of this section for the next calendar year....
 

 [[Image here]]
 

 “(h) Review of contribution rate, etc. Any employer may apply to the director for and shall be entitled to a review as to the determination of his benefit ratio and his contribution rate as fixed by his benefit ratio, provided such application is filed within 30 days of the date of the mailing by the director to the employer of the notice of such determination....
 

 “(i) Contribution rate, etc., of successor employer. For the purpose of this section, an employer’s benefit charges and that part of his taxable payroll with respect to which contributions have been paid, shall be deemed benefit charges and taxable payrolls of a successor employer and shall be taken into account in determining the contribution 1’ate of such successor employer as provided in subsection (f) of this section, if such successor succeeds the employer in any of the manners set out in paragraph (a)(4)a of Section 25^-8[, Ala.Code 1975]; provided, that an employer subject to this chapter who becomes such in any of the manners set out in paragraph (a)(4)b of Section 25-4-8 may have that portion of his predecessor’s benefit charges and that part of his predecessor’s total taxable payroll, with respect to which contributions have been paid which correspond to the segregable portion of the business assets and payroll thereof, acquired from his predecessor, deemed to be his benefit charges and his payroll and such shall be taken into account in determining his rates, as provided in subsection (f) of this section. ...”
 

 In
 
 Weathers v. City of Oxford,
 
 895 So.2d 305, 309 (Ala.Civ.App.2004), this court stated:
 

 “The applicable rules of statutory construction are quite clear:
 

 “ ‘ “The fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature in enacting the statute. Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect.” ’
 

 “Ex parte Master Boat Builders, Inc.,
 
 779 So.2d 192, 196 (Ala.2000) (quoting
 
 IMED Corp. v. Systems Eng’g Assocs.
 
 
 *193
 

 Corp.,
 
 602 So.2d 344, 346 (Ala.1992)). It is a well-established principle of statutory construction that the law favors rational and sensible construction. See
 
 Crowley v. Bass,
 
 445 So.2d 902 (Ala.1984); 2A Norman J. Singer,
 
 Sutherland Statutory Construction
 
 § 45.12 at 83-85 (6th ed.2000). Moreover, the Legislature will not be presumed to have done a futile thing in enacting a statute; there is a presumption that the Legislature intended a just and reasonable construction and did not enact a statute that has no practical meaning.
 
 See Ex parte Watley,
 
 708 So.2d 890 (Ala.1997);
 
 Ex parte Meeks,
 
 682 So.2d 423 (Ala.1996). Additionally, ‘[sjections of the Code originally constituting a single act must be read
 
 in pari materia
 
 in order to “produce a harmonious whole.” ’
 
 Ex parte Jackson,
 
 625 So.2d 425, 428 (Ala.1992) (quoting 2A Norman J. Singer,
 
 Sutherland Statutory Construction
 
 § 46.05 (5th ed.1993)) (footnote omitted).”
 

 Reading the provisions of § 25-4-54 as a whole, we are compelled to agree with ADIR that the determination that AHI was a successor in interest to Linden Lumber became final when AHI failed to appeal that determination within 30 days after it was notified of that determination by ADIR in the May 13, 2008, notification letter. As a result, we conclude that that determination could not be overturned by the trial court.
 

 First, § 25-4-54(h) allows an employer to apply to ADIR for a review of the determination of its benefit ratio and its contribution rate, provided such application is filed within 30 days of the date of the notice of the determination. ADIR mailed the notice of determination of AHI’s contribution rate on May 13, 2008. AHI failed to appeal that determination. ADIR then mailed to AHI, on August 6, 2008, a statement of benefits charged during the quarter ending on June 30, 2008, in accordance with § 25-4-54(c)(3). AHI again failed to file an application for a revision of those charges within the prescribed 30-day period. Thus, in accordance with § 25-4-54(c)(3), that statement became “conclusive and final.” AHI then, pursuant to the procedure in § 25-4-54(h), attempted to appeal the determination of its benefit ratio and, thus, its contribution rate for the year 2009, which were based on the determination that it was a successor in interest to Linden Lumber.
 

 AHI asserts that there is no language in § 25-4-54 prohibiting an employer from appealing a determination of a benefit ratio at any time. Rather, AHI argues, an employer is “simply required to file its dispute or contest within thirty (30) days of a quarterly notice, and then file its notice of appeal in the circuit court within thirty (30) days after [ADIR] rejects its contest or appeal.” Although we agree that AHI was within its rights to request a review as to the determination of its benefit ratio for the year 2009, in accordance with § 25-4-54(h), we conclude that that review was limited to factors that had not been previously determined, and made final, by ADIR in accordance with § 25-4-54 and the appeal process outlined therein.
 

 The benefits charged to AHI for the quarter ending on June 30, 2008, which were not appealed by AHI, were based on calculations made in accordance with subsections (d) and (i) of § 25-4-54, using the employment/unemployment history of Linden Lumber for the three preceding years. To allow AHI to challenge the benefit ratio for 2009 on the basis that ADIR’s determination that AHI was a successor in interest to Linden Lumber is incorrect would necessarily call into question ADIR’s previous determination of AHI’s benefit ratio for 2008, thereby allowing AHI another
 
 *194
 
 bite at the apple, so to speak, at a review of the 2008 determination and, essentially, nullifying the applicability of the 30-day appeal period under subsections (c)(3) and (h) of § 25-4-54 and the “finality” of ADIR’s determination under § 25-4-54(c)(3). Because we will not presume that the legislature has done a futile thing in enacting § 25-4-54, we conclude that it did not contemplate allowing an employer to seek review of a determination of a benefit ratio in a later year to the extent that it could affect the finality of unap-pealed decisions from earlier determinations.
 

 AHI failed to timely appeal ADIR’s determination that it was a successor in interest to Linden Lumber in accordance with § 25-4-54(h); we conclude, therefore, that that determination became final and unappealable upon the expiration of 30 days after ADIR sent AHI the notification letter on May 13, 2008. Although AHI was permitted to appeal ADIR’s determination of its 2009 benefit ratio,
 
 [1]
 
 it limited its argument in the trial court to challenging ADIR’s determination that it was a successor in interest to Linden Lumber. We conclude that the trial court erred in determining that AHI’s benefit ratio and unemployment-compensation contribution rate for 2009 should be recalculated based on its conclusion that AHI is not a successor in interest to Linden Lumber. We therefore reverse the trial court’s judgment and remand the cause to the trial court with instructions that it enter a judgment in favor of ADIR.
 

 REVERSED AND REMANDED WITH INSTRUCTIONS.
 

 THOMPSON, P.J., and PITTMAN, BRYAN, and THOMAS, JJ., concur.
 

 [1]
 

 . ADIR asserts on appeal that the trial court did not have jurisdiction to hear AHI's appeal from ADIR’s decision because AHI failed to timely file an appeal from ADIR's decision in 2008 that AHI was a successor in interest to Linden Lumber. We conclude that the trial court had jurisdiction to hear an appeal by AHI from ADIR's decision regarding AHI’s 2009 benefit ratio and contribution rate, yet it was improper for the trial court to reverse ADIR’s decision based on its finding error with ADIR’s earlier determination that AHI was a successor in interest to Linden Lumber. In other words, the trial court had jurisdiction to hear the appeal, but we reverse its judgment based on the substance of the appeal, not its jurisdiction to hear the same. To the extent AHI argues that ADIR did not raise the issue of jurisdiction or the trial court’s inability to reverse based on ADIR’s previous determination that AHI was a successor in interest to Linden Lumber before the trial court, we note that ADIR made similar arguments to the trial court both during the hearing and in its postjudgment motion.